UNITED STATES, Appellee

v

MARVIN R. DUNBAR, Private, U. S.
Marine Corps, Appellant

20 USCMA 478, 43 CMR 318

No. 23,508

April 9, 1971

*Captain Michael J. Levin,* USMCR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Kenneth N. Beth,* JAGC, USNR.

*Captain Frank J. Kaveney,* USMCR, argued the cause for Appellee,

United States. With him on the brief were *Lieutenant Colonel Charles J. Keever, USMC, and Commander Michael F. Fasanaro, Jr., JAGC, USN.*

## Opinion

FERGUSON, Judge:

The issue before us in this case—whether the plea of guilty to the charge of communicating a threat was provident—questions the application of this Court's opinion in United States v Care, 18 USCMA 535, 40 CMR 247 (1969).

The specification of Additional Charge I, to which the accused pleaded guilty[1] in a trial before a military judge alone, alleges that the accused "wrongfully communicate[d] to Sgt. R. M. Brown, U. S. Marine Corps, a threat by saying to him, 'BROWN, I'll kill you,' or words to that effect."

During the inquiry to determine the providence of the plea, the judge informed the accused of the elements of the offense of communicating a threat. He then inquired:

"MJ. Do you believe and admit that taken together, that these elements properly describe what you did?

"ACC. To a certain extent. . . . Yes, sir.

"DC. Your Honor, prior to your inquiry into the facts, the accused has, in advance to trial, entered into a stipulation of those facts at the time of these charges. At this time I will introduce that to you for your use in the inquiry and the trial counsel has stipulated to it, that he would consent to this stipulation."

The stipulation was entered into the record as Defense Exhibit A.

Later the judge asked the accused:

"MJ. Are you pleading guilty because in your own mind you are in fact guilty?

"ACC. I guess so, Your Honor."

When the military judge questioned the accused as to whether he understood the meaning and effect of his plea of guilty, he suggested that the accused confer with his counsel. He then asked defense counsel if he desired a recess at that time. Counsel replied:

"DC. No, sir. Private DUNBAR. . . . I want to explain to the court that he does not understand all the proceedings. That our discussions are to make sure that he understands the proceedings and that there is no real hesitantcy [sic] on his part regarding the pleas he is making. That he does now understand the proceedings.

"MJ. Very well, Private DUNBAR, do you still desire to enter a plea of guilty?

"ACC. Yes, Your Honor."

Thereafter, the military judge found the accused guilty of all the charges and specifications.

That portion of Defense Exhibit A, pertinent to the issue before us, is as follows:

"On the 20th of November 1969 I was in my cell in the Marble Mountain Air Facility Detention Facility at Marine Aircraft Group-16, 1st Marine Aircraft Wing, FMF Pacific. Sgt. R.M. Brown came into the cell area with some other people with a man under apprehension. I said the words 'I'll kill you' in Sgt. Brown's presence and directing them at him. I was locked in my cell at the time and Sgt. Brown was two cells down from mine. I had said other things to Sgt. Brown earlier like, 'Why don't you leave that man alone'. He had ignored me, so I said the words 'I'll kill you' to get his attention."

---

[1] The accused also pleaded guilty to a single specification alleging absence without leave for twenty-nine days (Charge I).

When this case was before the Court of Military Review, one judge dissented to the court's affirmance of the conviction. He would have reversed and authorized a rehearing because he believed that the military judge's inquiry was *"not the meaningful providency of plea inquiry decreed by the United States Court of Military Appeals in Care,"* especially in light of the accused's dubious responses to questions concerning his belief in his guilt. The majority of the Court of Military Review simply took the position that:

". . . Where there is a proper delineation by the military judge of the elements of the offense charged and thereafter an admission of factual guilt placed on the record, accused's later post-trial protestations of innocence will fall on deaf ears. *United States v Chancelor,* 16 USCMA 297, 36 CMR 453 [1966]; *United States v Boberg,* 17 USCMA 401, 38 CMR 199 [1968]."

In United States v Care, supra, this Court, at page 541, propounded the following mandate:

". . . [T]he record of trial for those courts-martial convened more than thirty days after the date of this opinion must reflect not only that the elements of each offense charged have been explained to the accused *but also that the military trial judge or the president has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge or president whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty.* United States v Rinehart, 8 USCMA 402, 24 CMR 212 [1957]; United States v Donohew, 18 USCMA 149, 39 CMR 149 [1969]. *This requirement will not be satisfied by questions such as whether the accused realizes that a guilty plea admits 'every element charged and every act or omission alleged and authorizes conviction of the offense without further proof.'*

A military trial judge or a president personally addressing the accused to explain the elements of the offense with which he is charged and to question him about his actions and omissions should feel no obligation to apologize or to disclaim any intent that his actions reflect on the competence of the accused's counsel. We believe the counsel, too, should explain the elements and determine that there is *a factual basis for the plea* but his having done so earlier will not relieve the military trial judge or the president of his responsibility to do so on the record." [Emphasis supplied.]

The underlying intent of the *Care* opinion was to secure, on the record of trial, a dialogue between the judge and the accused which would contain not only an explanation of the elements of the offense but also *an elicitation of the facts on which the charges were based.* Only when this is done, can it be said that "the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty."

In this case, the military judge detailed for the accused the elements of the offense of communicating a threat and the accused admitted that he understood them. However, his reply was equivocal when asked if he believed and admitted that these elements properly described what he did ("To a certain extent. . . . Yes, sir."). Later, the accused expressed some doubt when questioned whether he was pleading guilty because in his own mind he was in fact guilty ("I guess so, Your Honor."). The stipulation produced by defense counsel serves to explain the accused's hesitancy in his replies. Therein, he contends that he spoke the allegedly *threatening* words only to get the attention of Sergeant Brown. According to the stipulation, Brown was harassing or mistreating some one in a cell two cells away from the one in which the accused was locked.

In United States v Shropshire, 20 USCMA 374, 43 CMR 214 (1971), we held that the statement "' if you take this restraining gear off, I'll show you

what I will do," was insufficient to constitute a threat. Since no reasonable guard in a detention facility would have removed the restraining gear in order to permit an attack on himself, we held that the words were more braggadocio than a threat of the kind that a reasonable member of the armed forces should be concerned about. As we said in *Shropshire*, at page 376:

". . . The words uttered expressed a contingency that neutralized the declaration, since there was not a reasonable possibility the uncertain event would happen."

While this accused placed no direct contingency on his statement, he was in fact locked in his cell at the time and could do nothing to carry out the threat unless and until released by the confinement personnel.[2] The stipulation of fact reflects that his intention in speaking these words was to direct Brown's attention away from what he was then doing in another cell. However, he was informed by the military judge that one of the elements of the charge was, "That your communication of that language expressed a present determination to or intent to wrongfully injure another person, either then or sometime in the future."

The accused's uncertainty as to whether or not he was in fact guilty is, at least, understandable. In United States v Gilluly, 13 USCMA 458, 460, 461, 32 CMR 458 (1963), we said:

"The offense [of communicating a threat] is complete when one wrongfully communicates to another an ' "avowed present determination or intent to injure presently or in the future." ' United States v Holiday, 4 USCMA 454, 456, 16 CMR 28 [1954]. The intent which establishes the offense is that expressed in the language of the declaration, not the intent locked in the mind of the declarant. United States v Humphrys, 7 USCMA 306, 307, 22 CMR 96 [1956]. Thus, the presence

or absence of an actual intention on the part of the declarant to effectuate the injury set out in the declaration does not change the elements of the offense. This is not to say the declarant's actual intention has no significance as to his guilt or innocence. A statement may declare an intention to injure and thereby ostensibly establish this element of the offense, but *the declarant's true intention, the understanding of the persons to whom the statement is communicated, and the surrounding circumstances may so belie or contradict the language of the declaration as to reveal it to be a mere jest or idle banter.* United States v Humphrys, supra, page 307. Ragansky v United States, 253 Fed 643 (CA 7th Cir) (1918)." [Emphasis supplied.]

Dunbar's uncertain answers and the stipulation of fact, taken together, establish, in my opinion, an inconsistency with the plea of guilty to the charge of threat, under the holding in *Gilluly*. Cf. United States v Shropshire, supra.

It is basic military law and we have many times so held, that if an accused enters a plea of guilty and thereafter sets up matter inconsistent with the plea, "a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." Article 45, Uniform Code of Military Justice, 10 USC § 845; United States v Vaughn, 17 USCMA 520, 38 CMR 318 (1968), and cases cited at page 523. In the event such inconsistent matter is set up by the accused, it is the duty of the court to inquire into the question and determine whether the plea or the statement is to be withdrawn. Paragraph 70b, Manual for Courts-Martial, United States, 1969 (Revised edition); United States v McCoy, 12 USCMA 68, 30 CMR 68 (1960); United States v Vaughn, supra. Failure of the military judge to inquire fully into the circumstances surrounding this offense, in my opin-

---

[2] As in United States v Shropshire, 20 USCMA 374, 43 CMR 214 (1971), this accused made no effort to carry out the "threat" when he was relieved of his restraint.

ion, renders the plea improvident. United States v Care, supra.

That portion of the decision of the Court of Military Review affirming the accused's conviction of Additional Charge I is reversed. The record of trial is returned to the Judge Advocate General of the Navy. The Court of Military Review may reassess the sentence on the basis of the remaining finding of guilty or a rehearing may be ordered.

Judge DARDEN concurs in the result.

QUINN, Chief Judge (dissenting):

I am satisfied as to the providence of the plea of guilty and would, therefore, affirm the decision of the Court of Military Review. United States v Butler, 20 USCMA 247, 43 CMR 87 (1971).