**UNITED STATES, Appellee,**

v.

**Private E2 Ryan A. ROKEY, United States Army, Appellant.**

**ARMY 20021247.**

U.S. Army Court of Criminal Appeals.

21 Oct. 2005.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Sean S. Park, JA; Captain Michael L. Kanabrocki, JA (on brief).

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Mark L. Johnson, JA; Lieutenant Colonel Theresa A. Gallagher, JA; Captain Abraham F. Carpio, JA (on brief).

Before BARTO, Senior Judge, MAHER, and HOLDEN, Appellate Military Judges.

### OPINION OF THE COURT

BARTO, Senior Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of conspiracy to commit larceny, unauthorized absence (two specifications), insubordinate conduct toward a noncommissioned officer, and larceny (two specifications) in violation of Articles 81, 86, 91, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, 891, and 921 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for four months, forfeiture of two-thirds pay for four months, and reduction to Private E1.

This case is before us for review under Article 66, UCMJ, 10 U.S.C. § 866. The parties agree that the military judge failed to express the forfeitures in a whole dollar amount and that the convening authority improperly approved the erroneous punishment. Although not noted by appellant, our review of the record also reveals an unresolved inconsistency in the plea inquiry as it relates to the insubordination offense. These errors warrant relief for appellant. We will correct the errors and reassess the sentence in our decretal paragraph.

### Forfeitures

"[A] sentence to forfeiture shall state the exact amount in whole dollars to be forfeited each month and the number of months the forfeiture will last." Rule for Courts–Martial [hereinafter R.C.M.] 1003(b)(2); *see United States v. Garman,* 59 M.J. 677, 683 (Army Ct.Crim.App.2003). In this case, the sentence omits "the exact amount in whole dol-

lars to be forfeited" and the words "per month" after the forfeiture amount. The staff judge advocate repeated these errors in his post-trial recommendation to the convening authority. Omitting the words "per month" when announcing the sentence is a "legal sentence of forfeiture of the sum stated for one month only." *United States v. Guerrero*, 25 M.J. 829, 831 (A.C.M.R.1988) (citations omitted), *aff'd and modified on other grounds*; 28 M.J. 223 (C.M.A.1989); *see United States v. Gebhart*, 32 M.J. 634, 635 (A.C.M.R.1991). We will correct the sentence in our decretal paragraph.

### Plea Inquiry

Appellant pleaded guilty, *inter alia*, to insubordinate conduct toward Sergeant (SGT) Evaristo Garza. Specifically, appellant admitted to willfully refusing "to remove his headgear while being inspected" in response to SGT Garza's order to do so. Appellant also stipulated that he knew SGT Garza was a noncommissioned officer and that the order in question was lawful. However, during the plea inquiry, appellant related the following facts:

It started, roughly around 0600 when Sergeant Garza came up to my room. I was told to get a haircut the night before and I had arranged with someone in the barracks to cut my hair and the person that was supposed to cut it was not answering his door all night or wasn't there. So, the next morning when I woke up, I borrowed a set of clippers, hair clippers from someone in the barracks and was starting to remove the hair from my head ... shave it, and the clippers that I borrowed were not functioning properly and Sergeant Garza came upstairs, seen that I was having difficulty with the clippers. My hair was just patches missing from the clippers. He didn't let me try to remain upstairs to try and finish correcting it. He had me go downstairs immediately. We had formation. And, then the formation was handed down to the section and he tried to put me in front of the section and have me remove my headgear knowing that my hair was messed up like that.

When the military judge asked appellant why SGT Garza wanted appellant to remove his headgear, appellant responded, "I believe he wanted to humiliate me, sir, knowing that it was already messed up with patches missing, patches of hair missing, sir." The military judge then explained to appellant what constitutes a lawful order and told appellant that if the purpose of SGT Garza's order was to humiliate appellant the order was not lawful. He asked appellant to explain how SGT Garza's order was lawful. Because appellant could not answer the military judge's inquiry satisfactorily, the military judge asked government counsel to explain the lawfulness of SGT Garza's order. Trial counsel requested a brief recess to allow the government time to speak to SGT Garza about the order.

After the recess, the military judge again elicited the facts surrounding appellant's purportedly insubordinate conduct. Appellant told the military judge that SGT Garza asked him to take a position in front of the section formation and then asked him twice to remove his headgear. Appellant said that on both occasions he told SGT Garza "no" and stated that SGT Garza had already seen his haircut when they were upstairs in his barracks room. Sergeant Garza did not explain to appellant why it was necessary to have appellant remove his headgear in front of the formation, nor did SGT Garza inspect any other soldiers during the formation. The military judge proceeded as follows:

MJ: Did [SGT Garza] carefully look at your haircut when he went to your room prior to this formation?

ACC: No, sir. He did see that it was—patches were missing though.

MJ: Why do you say he did see that?

ACC: It was fairly obvious to tell, sir.

MJ: Well, did he make any comments, like what happened to your hair, Rokey or are you just making the assumption he saw that your haircut had not turned out the way you had hoped?

ACC: I believe he did make a comment towards it, sir, what he said I don't remember though.

MJ: Well, he didn't carefully inspect your haircut in your room?

ACC: No, sir.

MJ: And, what I heard you say, Private Rokey is Sergeant Garza didn't make any statements that would indicate to you why he was calling you up to the front of the formation?

ACC: Correct, sir.

MJ: And, as far as you know, he was doing that to inspect your haircut to ensure you complied with his order the previous night?

ACC: Correct, sir.

MJ: You just don't know?

ACC: Correct, sir.

\* \* \* \* \* \*

MJ: Would you agree that his order to you to remove your headgear was a lawful order as I defined that term for you?

ACC: Yes, sir.

"Unlike the civilian criminal justice system, Article 45(a) requires that, in a guilty-plea case, inconsistencies and apparent defenses must be resolved by the military judge or the guilty pleas must be rejected." *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F.1996) (citing *United States v. Jemmings*, 1 M.J. 414, 418 (C.M.A.1976); *United States v. Dunbar*, 20 U.S.C.M.A. 478, 43 C.M.R. 318, 1971 WL 12785 (1971)). "Mere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea." *Outhier*, 45 M.J. at 331 (citing *United States v. Terry*, 21 U.S.C.M.A. 442, 45 C.M.R. 216, 1972 WL 14158 (1972)). If the military judge fails to resolve such inconsistencies or apparent defenses, we may set aside the affected findings on appeal if "there is a substantial basis in law and fact for questioning the plea." *United States v. McCrimmon*, 60 M.J. 145, 152 (C.A.A.F.2004) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)).

Appellant initially asserted during the plea inquiry that SGT Garza ordered him to remove his headgear to humiliate him in front of the section formation. An order that is not reasonably necessary "to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command" is unlawful, and disobedience of such an order is not punishable under Article 91, UCMJ. *See Manual for Courts-Martial, United States* (2002 ed.) [hereinafter *MCM*], Part IV, para. 14c(2) (discussing lawfulness of orders); *cf.* UCMJ art. 93, 10 U.S.C. § 893 (prohibiting abuse of authority). As such, an order given for the sole purpose of humiliating appellant would be unlawful under the circumstances, and appellant's assertion would be inconsistent with his guilty plea. *See* UCMJ art. 45(a), 10 U.S.C. § 845. The military judge recognized the issue and attempted to resolve this inconsistency at trial by eliciting appellant's agreement to a series of leading questions concerning SGT Garza's opportunity to observe appellant's haircut while SGT Garza was in appellant's barracks room. Appellant agreed that SGT Garza did not carefully inspect his haircut before the formation and that the public inspection was therefore lawful. The military judge apparently concluded that this agreement was sufficient to establish the necessity of SGT Garza's attempt to inspect appellant's haircut in front of the formation.

■ As a general matter, the "resolution" of a matter inconsistent with a guilty plea involves more than simply eliciting additional inculpatory statements from an accused. "Resolution" is "the act or process of reducing to a simpler form," i.e., one without conflict or inconsistency. Webster's Third New International Dictionary of the English Language, Unabridged, 1933 (1971 ed.). To resolve a matter inconsistent with a guilty plea, the military judge must, therefore, identify the particular inconsistency at issue and explain its legal significance to the accused, who must then either retract, disclaim, or explain the inconsistent matter. *Cf.* R.C.M. 910(e) discussion (recommending a similar process when a potential defense is raised during guilty-plea proceeding). The military judge need not "drag appellant across the providence finish line," *see United States v. Le*, 59 M.J. 859, 864 (Army Ct.Crim.App. 2004) (quoting *United States v. Pecard*, ARMY 9701940, slip op. at 8 (Army Ct.Crim. App. 7 Dec. 2000) (unpub.)), and the guilty plea must be rejected unless the inconsistent matter is resolved. *See* UCMJ art. 45(a).

■ Under the facts of this case, the military judge did not have appellant revisit the inconsistent matter (i.e., "I believe he wanted

to humiliate me, sir, knowing that it was already messed up with patches missing, patches of hair missing, sir."). Instead, the military judge used leading questions as if on cross-examination in an effort to elicit appellant's agreement that SGT Garza did not look "carefully" at appellant's haircut in the barracks room. In a contested trial, such an admission would tend to establish the necessity of SGT Garza's public haircut inspection. In a guilty-plea setting, such an indirect approach may leave the inconsistent matter that prompted the questioning on the record and unresolved.* We conclude that the military judge failed to resolve the inconsistency raised by appellant concerning the lawfulness of SGT Garza's order, and, as such, there is a substantial basis in law and fact for questioning appellant's guilty plea to insubordinate conduct. We will take appropriate action in the decretal paragraph below.

The remaining issues raised by appellant are without merit.

## Decision

The findings of guilty of Specification 2 of Charge III and Charge III are set aside.

The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and the principles in *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), we affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for 105 days, forfeiture of $737.00 pay per month for one month, and reduction to Private E1. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision are ordered restored as mandated by Article 75(a), UCMJ, 10 U.S.C. § 875(a).

Judge MAHER and Judge HOLDEN concur.

---

* There may have been a valid military purpose for SGT Garza's order. Even with the potential consequence of some personal humiliation for appellant, a valid military purpose for the order might justify its legal enforceability. *See MCM*, Part IV, para. 14c(2)(iii). In such cases, defense counsel must recognize the possibility of inconsistency before trial and explore with the accused whether there is a lawful basis for the order. Defense counsel must also determine whether the accused can articulate an adequate factual predicate for a guilty plea. The prosecutor, if invited by the trial judge, may certainly suggest the theory of legal culpability upon which the offense was referred. But it is ultimately the accused who must admit to the military judge the necessary factual predicate for guilt. *See* R.C.M. 910(e) discussion ("[T]he accused must be convinced of, and able to describe all the facts necessary to establish guilt.").