# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SCHENCK, ZOLPER, and WALBURN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JOHN W. CHRISTY**
**United States Army, Appellant**

ARMY 20050291

U.S. Army Air Defense Artillery Center and Fort Bliss
Mark P. Sposato, Military Judge
Colonel Mark A. Rivest, Staff Judge Advocate

For Appellant:  Captain Ryan M. Suerth, JA (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel Kirsten V.C. Brunson, JA; Major Charles L. Pritchard, Jr., JA; Major Daniel E. Goldman, JA, USAR (on brief); Major Billy B. Ruhling II, JA; Major Tyesha E. Lowery, JA.

For Appellee:  Captain Jaired D. Stallard, JA (argued); Colonel John W. Miller II, JA; Lieutenant Colonel Michele B. Shields, JA; Captain Magdalena A. Acevedo, JA (on brief).

22 June 2007

---------------------------------------
OPINION OF THE COURT
---------------------------------------

ZOLPER, Judge:

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2), and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5), in violation of Article 134 (clause 3), Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ].  The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for twelve months, forfeiture of all pay and allowances, and reduction to Private E1.  This case is before the court for review pursuant to Article 66(c), UCMJ.

Appellate defense counsel assert, *inter alia*, appellant's guilty plea to distributing child pornography was improvident.  The defense argues appellant never mailed, transported, or shipped child pornography, or otherwise "delivered it to the possession of another."  The defense also argues appellant did not invite others to

view child pornography stored on his computer, or make others aware such materials existed. In essence, appellate defense counsel contend the record of trial contains "absolutely no evidence" of appellant's "intent to distribute" child pornography and, therefore, does not support his conviction for distribution of child pornography within the meaning of 18 U.S.C. § 2252A(a)(2).

We hold that appellant's guilty plea to distributing child pornography was provident. In doing so, we necessarily address what appears to be a matter of first impression before this court and decide whether appellant's use of LimeWire[1] peer-to-peer file-sharing software to search for and download child pornography files from other LimeWire users, while allowing other users to search for and download child pornography from him, constitutes "distribution" of child pornography. We hold that "sharing" child pornography files using peer-to-peer file-sharing software constitutes "distribution" of child pornography within the meaning of 18 U.S.C. § 2252A(a)(2), and affirm the findings of guilty and the sentence.

**FACTS**

In the stipulation of fact and during the providence inquiry, appellant admitted the following facts. Appellant used Internet peer-to-peer file-sharing software called LimeWire to download child pornography images and video files. Once appellant installed LimeWire on his computer, he became part of an Internet file-sharing network. As a member of the network, appellant understood he could download files from other LimeWire users, and other LimeWire users could download files from him.[2] To assist users in locating files they might want to download, LimeWire provides a search function. By searching for "key words," such as "cheerleader" and "incest," appellant located and downloaded child pornography from other LimeWire users' "shared files." Once downloaded, the child pornography was stored in a "shared files" folder located on appellant's computer and accessible by other LimeWire users.

On 8 September 2003, Agent Dubord, assigned to a Federal Bureau of Investigation (FBI) Task Force, was conducting an undercover child pornography

---

[1] Although the record identifies this file-sharing software using the spelling "Limewire," for consistency, we will spell "LimeWire" using a capital W throughout this opinion. *See* LimeWire, The Fastest File Sharing Program on the Planet, *at* http://www.limewire.com (last visited 22 June 2007).

[2] *See* LimeWire, Understanding Peer-to-Peer Networking and File-Sharing, *at* http://www.limewire.com/about/p2p.php (last visited 22 June 2007).

investigation. He logged on to the Internet, launched LimeWire file-sharing software, and conducted a key-word search using the word "kindergarten." The search result provided a list of "shared files" containing that key word maintained by LimeWire users. Agent Dubord selected a video file linked to the "shared files" folder on appellant's computer. The video file was labeled with a sexually explicit file name indicating it contained child pornography.[3] After selecting the video file, Agent Dubord downloaded it and determined the file contained child pornography.

A subsequent investigation revealed appellant possessed fourteen "picture files and [twenty-one video] files depicting children under the age of [eighteen] engaging in sexually explicit conduct."[4] On 9 January 2004, Special Agent Roach from the Fort Bliss Criminal Investigation Command seized from appellant's barracks room two computers and a collection of diskettes ("floppy disks"), compact discs (CDs), compact discs with read-only memory (CD-ROMs), and digital video discs (DVDs).

Appellant's stipulation of fact, voluntarily entered into as part of his pretrial agreement, "correctly describe[ed] the offenses to which [he pleaded] . . . guilty," and acknowledged other LimeWire users had access to the child pornography appellant stored in his "shared files" folder. Paragraph 4 of the stipulation of fact states:

> [Appellant] used the program, "LimeWire," to download
> and share files over the [I]nternet. . . . [Appellant] knew
> that LimeWire is a program that allows all subscribers to
> download and share files from and with each other.
> [Appellant] knew that by using LimeWire, files he
> downloaded would be stored in his "shared" folder. He
> also knew that any files in his shared folder could be
> accessed by any other person who had access to the
> [I]nternet and used the LimeWire program. [Appellant]
> knowingly possessed images of children engaging in
> sexually explicit conduct via LimeWire[,] and knew that
> the images were stored in his "shared" folder unless he

_____

[3] This video file is titled "10years_[]_with_her_11years_brother_reelkiddymov _Lolita preteen young incest kiddie pornosex ddoggprn.mpg.mpg (child porn)."

[4] Appellant told the military judge, consistent with the stipulation of fact, he believed these images were of children approximately fourteen to sixteen years old, and in some cases, as young as ten or eleven years old.

made the affirmative effort to delete them. [Appellant] knew that files in his shared folder would be presented to others who accessed his shared folder, and therefore, available for distribution to other persons using LimeWire. [Appellant] also knew that files were distributed from his LimeWire shared folder. [Appellant] allowed other users to access his shared folder via the [I]nternet, which he admits is a form of interstate commerce, and therefore, made these distributions to other LimeWire users in interstate commerce.

In paragraph 9, appellant "admits that the file named in paragraph 3[5] of [the stipulation of fact] was distributed in interstate commerce, via the [I]nternet, to [Agent] Dubord[,] and [Agent] Dubord received that file from [appellant's] computer."

During the providence inquiry, appellant and the military judge engaged in the following colloquy regarding distributing child pornography:

MJ: Tell me how you think you may have distributed child pornography during the period alleged?

ACC: I had those files in my shared folder on LimeWire. So whenever I had LimeWire running [and was connected to the Internet], anybody could have accessed those images.

. . . .

MJ: . . . [Y]ou understood that [LimeWire] was a file-sharing program?

ACC: Yes, sir.

MJ: And once again, your understanding was that persons using that program could access files on your computer and swap them?

ACC: Yes, sir.

---

[5] *See* note 3, *supra*.

> . . . .
>
> MJ:  Do you doubt that people may have downloaded files from your computer during the timeframe alleged?
>
> ACC:  No, sir.
>
> MJ:  And during that timeframe did you know that you distributed child pornography?
>
> ACC:  Yes, sir.
>
> MJ:  How did you know that?
>
> ACC:  Because it was in my shared folder in the LimeWire program.  So every time I signed on [to the Internet], anybody could access [it].
>
> MJ:  And during that time you were conscious of the fact that there were images containing child pornography that you had[ not] . . . delet[ed] at that time?
>
> ACC:  Yes, sir.

Appellant also told the military judge he thought distributing child pornography was wrongful because it involved "spreading the files around, [and] giving access to the files to persons unknown."  Appellant and the military judge then briefly discussed the video file Agent Dubord downloaded as follows:

> MJ:  Now the stipulation [of fact] reflects that an FBI agent, [Agent] Dubord, actually downloaded a particular file from your computer using th[e] LimeWire program; are you aware of that?
>
> ACC:  Yes, sir.
>
> . . . .
>
> MJ:  Are you satisfied that that actual file was contained on your computer in that LimeWire file?
>
> ACC:  Yes, sir.

5

. . . .

MJ:  And how do you believe that Agent Dubord downloaded that file?

ACC:  He typed in a search word and went to files that popped up.  He clicked on one that was on my computer and downloaded it.

MJ:  By use of the Internet?

ACC:  Yes, sir.

The child pornography appellant downloaded using LimeWire software formed the basis for Specification 1 of the Charge (possession of child pornography).  The access to child pornography appellant provided other LimeWire users, as well as Agent Dubord's act of downloading a video file containing child pornography, formed the basis for Specification 2 of the Charge (distribution of child pornography).

## LAW

### Standard of Review

The rules governing intermediate-level review of guilty pleas is well established in military jurisprudence.  In *United States v. Firth*, 64 M.J. 508 (Army Ct. Crim. App. 2006), this court reiterated:

> The Courts of Criminal Appeals review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Abbey*, 63 M.J. 631, 632 (Army Ct. Crim. App. 2006) (citing *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)).  On appeal, we will not overturn a military judge's acceptance of a guilty plea unless the record of trial reveals a substantial basis in law and fact for questioning the military judge's decision. *United States v. Adams*, 63 M.J. 223, 226 (C.A.A.F. 2006) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)).  A legally and factually sound providence inquiry must establish that the accused admits and believes he is guilty of his crimes, and provide a developed factual predicate, in declaratory fashion, that objectively supports, and is consistent with, the guilty plea.  Rule for Courts-Martial

6

> [hereinafter R.C.M.] 910(e); *United States v. Simmons*,
> 63 M.J. 89, 92 (C.A.A.F. 2006); *United States v. Barton*,
> 60 M.J. 62, 64 (C.A.A.F. 2004); *United States v. Morris*,
> 58 M.J. 739, 742-43 (Army Ct. Crim. App. 2003).

*Id*. at 510; *United States v. Brooks*, 64 M.J. 587, 589 (Army Ct. Crim. App. 2006) (stating same); *United States v. Axelson*, __ M.J. __, 2007 CCA LEXIS 140, *26–*33 (Army Ct. Crim. App. 2007) (discussing guilty plea jurisprudence). Furthermore, a military judge can use a stipulation of fact in conjunction with the accused's verbal admissions, *United States v. Sweet*, 42 M.J. 183, 185–86 (C.A.A.F. 1995), but there must be sufficient evidence that the accused is "'convinced of, and able to describe[,] all the facts necessary to establish guilt.'" *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996) (quoting R.C.M. 910(e) discussion).

Article 45(a), UCMJ, states: "If an accused . . . after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently . . . a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." Our superior court has interpreted this statutory provision to mean that, should an accused set up matters inconsistent with his plea, "'inconsistencies and apparent defenses must be resolved by the military judge or the guilty pleas must be rejected.'" *United States v. Rokey*, 62 M.J. 516, 518 (Army Ct. Crim. App. 2005) (quoting *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996)); R.C.M. 910(h)(2). While the military judge need not "drag appellant across the providence finish line," *United States v. Le*, 59 M.J. 859, 864 (Army Ct. Crim. App. 2004), he is duty-bound to "identify the particular inconsistency at issue and explain its legal significance to the accused, who must then either retract, disclaim, or explain the inconsistent matter." *Rokey*, 62 M.J. at 518.

## "*Distribution*" *Defined*

Appellant's conviction for distributing child pornography is based upon a violation of the Child Pornography Prevention Act (CPPA), 18 U.S.C. § 2251, *et seq*., specifically, 18 U.S.C. § 2252A(a)(2). The statute itself, however, does not define "distribute;" nor does 18 U.S.C. § 2256, which provides definitions for Chapter 110, "Sexual Exploitation and other Abuse of Children," under which § 2252A falls. Determining how Congress intended to define "distribute" when it enacted 18 U.S.C. § 2252A(a)(2) "is a question of statutory interpretation . . . that we review de novo." *United States v. Martinelli*, 62 M.J. 52, 56 (C.A.A.F. 2005).

Our colleagues in the federal civilian judiciary have clarified the meaning of "distribution" within the context of 18 U.S.C. § 2252A(a)(2). In *United States v.*

*Shaffer*, 472 F.3d 1219 (10th Cir. 2007), the Tenth Circuit adopted the plain meaning of "distribute."  Citing two lexicons, the *Shaffer* Court stated:

> Black's offers this definition:  "1. To apportion; to divide among several.  2. To arrange by class or order.  3. To deliver.  4. To spread out; to disperse."  Black's Law Dictionary 508 (8th ed. 2005).  Webster's adds this understanding:  "to divide among several or many . . . deal out . . . apportion esp. to members of a group or over a period of time . . . [allot] . . . [dispense] . . . to give out or deliver."  Webster's Third New Int'l Dictionary Unabridged 660 (2002).  The instruction offered by the District Court to the jury captured much the same sentiment:  "To distribute something simply means to deliver or transfer possession of it to someone else."

*Id*. at 1223 (alterations in original).

In *United States v. Griffin*, 482 F.3d 1008 (8th Cir. 2007), the Eighth Circuit discussed definitions of "distribution" contained in the *U.S. Sentencing Guidelines Manual* (2006) [hereinafter U.S.S.G.], and applied them to offenses charged under 18 U.S.C. § 2252A(a)(2).  The *Griffin* Court stated:

> "Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain" means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit.  "Thing of value" means anything of valuable consideration.  For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.  Additionally, "'[d]istribution' means *any act* including production, transportation, and possession with intent to distribute, related to the transfer of material involving the sexual exploitation of a minor."

482 F.3d at 1011 (quoting U.S.S.G. § 2G2.2. app. n.1) (alteration in original) (internal citation omitted).  At least one federal district court has defined "distribution" as "includ[ing] acts such as 'posting material involving the sexual exploitation of a minor on a website for public viewing.'"  *United States v. McVey*, 476 F. Supp. 2d 560, 562 (E.D. Va. 2007) (quoting U.S.S.G. § 2G2.2. cmt. n.1);

8

*United States v. Bender*, 290 F.3d 1279, 1286 (11th Cir. 2002) ("[W]e hold that when a defendant trades child pornography in exchange for other child pornography, the defendant has engaged in distribution for the receipt, or expectation of receipt, of a thing of value . . . .") (internal quotation marks omitted).[6]

*Required Mens Rea Under 18 U.S.C. § 2252A(a)(2)*

Criminal law distinguishes between knowledge and intent. An accused *knowingly* distributes child pornography when "he is aware that it is practically certain that his conduct will cause such a result," despite what his desire might be as to the result. Wayne R. LaFave, *Criminal Law* 231–32 (3d ed. 2000) (internal quotation marks omitted). An accused, however, *intentionally* distributes child pornography when "it is his conscious object[ive or desire, whatever the likelihood,] to cause such a result." *Id.* at 231 (internal quotation marks omitted). The two states of mind are not interchangeable. A "knowing" distribution imports a state of mind that accommodates a lesser certainty of result than does an "intentional" distribution. Both are culpable, but describe differing states of criminal awareness. "Knowing," in this sense, connotes something less than the "absolute certainty" implied by "intentional." However the difference between these two *mens rea* may be characterized, the fact remains that for determining the providence of this appellant's guilty plea, only the lesser *mens rea* of a "knowing" distribution is required.

This point is illustrated by the statute itself. 18 U.S.C. § 2252A(a)(2) holds criminally liable "any person who . . . *knowingly* . . . *distributes* . . . any child pornography . . . [or] . . . any material that contains child pornography." (Emphasis added.) Therefore, in a contested case, the government does not have to prove

---

[6] *See also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 920 (2005) ("[P]eer-to-peer networks are employed to store and *distribute* electronic files by universities, government agencies, corporations, and libraries, among others.") (emphasis added); *id.* at 922–23 ("Some musical performers, for example, have gained new audiences by *distributing* their copyrighted works for free across peer-to-peer networks . . . .") (emphasis added); *cf.* 18 U.S.C. § 841(n) (rendering definitions for "Chapter 40. Importation, Manufacture, Distribution and Storage of Explosive Devices," and stating: "'Distribute' means sell, issue, give, transfer, or otherwise dispose of."); 18 U.S.C. § 1468(b) (criminalizing "[d]istributing obscene material by cable or subscription television," and stating: "As used in this section, the term 'distribute' means to send, transmit, retransmit, telecast, broadcast, or cablecast, including by wire, microwave, or satellite, or to produce or provide material for such distribution.").

beyond a reasonable doubt that an accused had the "*intent* to distribute" child pornography, or that he "caused [child pornography] to be distributed." *Shaffer*, 472 F.3d at 1226 (alteration in original). The government need only prove by legally competent evidence the accused *knowingly distributed* child pornography in order to satisfy the required *mens rea* element in 18 U.S.C. § 2252A(a)(2). *Id.* at 1225–26, 1227.

"'[A] guilty plea is an admission of all the elements of a formal criminal charge[.]'" *Barton*, 60 M.J. at 64 (quoting *United States v. Care*, 18 U.S.C.M.A. 535, 539, 40 C.M.R. 247, 251 (1969)) (alterations in original). When an accused enters pleas of guilty, he relieves the government of its "burden to prove his guilt beyond a reasonable doubt." *United States v. Gutierrez*, 64 M.J. 374, 379 (C.A.A.F. 2007) (Baker, J., dissenting) (recognizing "the Supreme Court and this Court have long held that an accused can waive certain core [C]onstitutional rights, such as the right to trial itself"). Therefore, in a guilty plea case, to satisfy the required *mens rea* element in 18 U.S.C. § 2252A(a)(2), an accused need only admit facts that objectively establish he *knowingly distributed* child pornography.

## DISCUSSION

Appellant now asserts his guilty plea to distributing child pornography was improvident. He argues he never affirmatively gave or delivered child pornography to others (or intended to do so), and did not invite others to view child pornography stored on his computer. Appellant, therefore, contends making child pornography available to others using LimeWire peer-to-peer file-sharing software does not constitute "distribution" under 18 U.S.C. § 2252A(a)(2). We disagree.

Appellant pleaded guilty to two specifications alleging violations of 18 U.S.C. § 2252A, charged under clause 3 of Article 134, UCMJ. The military judge twice carefully explained appellant's rights to counsel, forum selection, and pleas, and appellant affirmatively stated he understood them. The military judge also explained to appellant the meaning of his pleas, and appellant affirmatively indicated he fully understood the ramifications of his decision to plead guilty. Furthermore, the military judge explained to appellant the elements and definitions regarding distributing child pornography, and appellant affirmatively acknowledged he understood them, had no questions about them, and believed and admitted those elements and definitions correctly described his charged misconduct.

In this case, appellant's actions establish he voluntarily disseminated or transferred, i.e., knowingly distributed, child pornography to other people. Appellant admitted he downloaded child pornography files using LimeWire software, purposely stored the files in his "shared files" folder, and could have, but did not, remove or delete the child pornography from that folder. More important,

appellant told the military judge he knew he had been "distributing" child pornography because he stored those files in his "shared files" folder, which other LimeWire users could access and from which they could download. He further stated "whenever [he] had LimeWire running[, and was connected to the Internet], anybody could have accessed those images" because LimeWire "was a file-sharing program." Appellant agreed with the military judge that "you may not even be aware that [others are] downloading [a] file at the time," but admitted he had no doubt other LimeWire users had downloaded child pornography from his computer. Furthermore, appellant told the military judge he knew Agent Dubord "actually downloaded" a video file containing child pornography from his computer using LimeWire peer-to-peer file-sharing software. Based on these facts, we do not find a substantial basis in law and fact for questioning appellant's guilty plea to distributing child pornography. *Firth*, 64 M.J. at 510. Appellant admitted facts that objectively establish he knowingly distributed child pornography within the meaning of 18 U.S.C. § 2252A(a)(2). "In determining whether the providence inquiry provides facts inconsistent with the guilty plea, we take the accused's version of the facts 'at face value.'" *United States v. Gilchrist*, 61 M.J. 785, 791 (Army Ct. Crim. App. 2005) (quoting *United States v. Jemmings*, 1 M.J. 414, 418 (C.M.A. 1976)).

The facts in appellant's case are almost identical to those in *Shaffer*, 472 F.3d at 1219, a case involving a defendant who was caught distributing child pornography in much the same way as was appellant. *Id*. at 1222. In *Shaffer*, a special agent from the U.S. Department of Homeland Security's Bureau of Immigration and Customs Enforcement discovered a "shared folder," accessible by other account users, which had "a large number of files containing images and videos of child pornography." *Id*. The special agent then downloaded images of child pornography stored on Mr. Shaffer's computer. *Id*. Further investigation led to a search of Mr. Shaffer's home, the seizure of his computer, and his subsequent confession that he "knowingly download[ed] . . . 100 [video files] and 20 still photos involving child pornography." *Id*.

Mr. Shaffer used file-sharing software similar to LimeWire called Kazaa.[7] There was no question that Mr. Shaffer, like appellant, understood other users had

---

[7] "Kazaa is a peer-to-peer computer application that allows users to trade computer files through the Internet. It is hardly a unique service; at any one time today, there are apparently in excess of four to five million people online sharing over 100 million files." *Shaffer*, 472 F.3d at 1221 (internal citation and footnote omitted); *see* Kazaa, *at* http://kazaa.com/us/index.htm (last visited 22 June 2007); *see also United States v. Ober*, ARMY 20040081 (Army Ct. Crim. App. 25 May 2007) (unpub.)

(continued . . .)

11

access to, and downloaded images from, his shared files folder, which contained child pornography. *Id*. at 1222, 1224. As the *Shaffer* parties further explained in their respective appellate pleadings, new users obtain peer-to-peer file-sharing software at the Kazaa website by using "an installation wizard[8] that walks them through a step-by-step setup process." *Id*. at 1221. Before one can install Kazaa software, the wizard requires users to agree to Kazaa's licensing agreement. *Id*. The new user then selects a location on his or her computer to download Kazaa software, and creates a "shared folder" where "the files . . . download[ed] from the shared folders of other Kazaa users" will be stored. *Id*. Finally, any files in the "shared folder may be accessed and downloaded by other Kazaa users." *Id*. A user can also affirmatively opt out of allowing other Kazaa users access to his "shared folder" and, therefore, restrict the ability to download files from his computer. *Id*.

Here, appellant may not have actively sought out individuals and advertised he had child pornography he was willing to share or exchange. He may not have physically distributed child pornography to anyone, but, by downloading LimeWire software and setting up a "shared files" folder, appellant agreed to share all files in that folder, i.e., all his child pornography, with all other LimeWire users. The *Shaffer* Court appositely analogized this type of child-pornography sharing to a self-serve gas station:

> The owner may not be present at the station, and there may be no attendant present at all. And neither the owner nor his or her agents may ever pump gas. But the owner has a roadside sign letting all passersby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card. Just because the operation is self-serve, or in Mr. Shaffer's parlance, passive, we do not doubt for a moment that the gas station owner is in the business of "distributing," "delivering," "transferring" or "dispersing" gasoline; the *raison d'etre*[, or underlying principle,] of owning a gas station is to do just that. So, too, a reasonable jury could find that

_____

(. . . continued)
(discussing transportation of child pornography in interstate commerce using Kazaa software in violation of 18 U.S.C. § 2252A(a)(1)).

[8] A "wizard" is a "program that guides a user through a procedure by means of a sequence of simple on-screen instructions and options." *Id*. at 1221 n.2.

> Mr. Shaffer welcomed people to his computer and was
> quite happy to let them take child pornography from it.

*Shaffer*, 472 F.3d at 1223–24; *see Griffin*, 482 F.3d at 1012 ("Based on [facts similar to those in *Shaffer*,] the applicable definition of 'distribution[,]' and our reasoning in [*United States v.*] *Sewell*, [457 F.3d 841, 842 (8th Cir. 2006),] Griffin was engaged in the distribution of child pornography.").

## CONCLUSION

Appellant, just like Mr. Shaffer and Mr. Griffin, welcomed other LimeWire users to his computer and voluntarily permitted them to take child pornography from his shared files folder. On one occasion, Agent Dubord availed himself of the opportunity and actually downloaded a child pornography video file. Adopting the definitions and reasoning used in *Shaffer* and *Griffin*, we hold appellant's use of peer-to-peer file-sharing software, to download and then share—or otherwise disseminate—child pornography stored on his computer, constitutes "distribution" of child pornography within the meaning of 18 U.S.C. § 2252A(a)(2).

We have considered appellant's other assignment of error, and those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), in our review of the entire record and find them to be without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge SCHENCK and Judge WALBURN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

13