**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3437-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GERALD D. LAPHAN,

    Defendant-Appellant.

_____

Argued October 16, 2017 - Decided November 29, 2017

Before Judges Accurso and Vernoia.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Indictment No.
14-09-0140.

Thomas J. Gosse argued the cause for
appellant.

Jana Robinson, Deputy Attorney General,
argued the cause for respondent (Christopher
S. Porrino, Attorney General, attorney; Ms.
Robinson, on the brief).

PER CURIAM

    Defendant Gerald D. Laphan was convicted by a jury of two

counts of second-degree endangering the welfare of a child by

the offering and distribution of child pornography, N.J.S.A. 2C:24-4b(5)(a); and fourth-degree endangering the welfare of a child by possession of child pornography, N.J.S.A. 2C:24-4b(5)(b); based largely on a voluntary statement he made to the police following the seizure of two computers found in his bedroom pursuant to a search warrant. Defendant received an eight-year prison term and was required to register under Megan's Law, N.J.S.A. 2C:7-1 to -23. Defendant appeals his conviction, raising the following issues for our consideration:

POINT I

THE FAILURE TO CONDUCT A RULE 104(C) HEARING ON THE ADMISSIBILITY OF THE DEFENDANT'S TAPED STATEMENT (AUDIO ONLY) MANDATES THAT HIS CONVICTIONS BE REVERSED. (Not raised below.)

POINT II

THE DEFENDANT'S STATEMENT SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE BECAUSE HE DID NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY WAIVE HIS CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION. THEREFORE, HIS CONVICTIONS MUST BE REVERSED. (Not raised below.)

POINT III

IN THE EVENT THIS COURT DETERMINES THAT THE DEFENDANT'S STATEMENT WAS VOLUNTARY, NOT ALLOWING THE JURY TO HEAR THE FULL STATEMENT OF THE DEFENDANT AND THE CONTEXT IN WHICH IT WAS GIVEN MADE THE USE OF THE STATEMENT AGAINST THE DEFENDANT PATENTLY UNFAIR. THE ENTIRE STATEMENT (ABSENT THE INTERROGATOR

DECLARING THAT DEFENDANT IS GUILTY) SHOULD
HAVE BEEN GIVEN TO THE JURY AND THE FAILURE
TO DO SO DENIED THE DEFENDANT A FAIR TRIAL.
(Not raised below.)

POINT IV

THE PROSECUTOR'S COMMENTS IN HER SUMMATION
THAT DEFENDANT'S FAILURE TO TELL POLICE
DURING HIS INTERROGATION THAT HE DID NOT
CREATE NOR VIEW THE CONTENTS IN THE FILE
SHARING FOLDER (EVEN THOUGH HE WAS NEVER
ASKED) AS EVIDENCE OF DEFENDANT'S GUILT IS
GROUNDS FOR REVERSAL.

POINT V

EXCLUSION OF THE TEXT MESSAGE WHICH WOULD
HAVE STRONGLY CORROBORATED THE DEFENSE'S
CONTENTION THAT THE DEFENDANT WAS NOT AT THE
CRIME SCENE WHEN THE CRIMES WERE COMMITTED
WAS AN ERROR WHICH DENIED THE DEFENDANT A
FAIR TRIAL; THEREFORE, HIS CONVICTIONS MUST
BE REVERSED.

POINT VI

THE PORTIONS OF THE DEFENDANT'S STATEMENT
THAT WERE ADMITTED CONTAINED DECLARATIONS BY
INVESTIGATORS THAT THE EVIDENCE THE STATE
HAD, MADE THE DEFENDANT'S GUILT AS TO ALL
CHARGES INDISPUTABLE. THESE DECLARATIONS
DENIED THE DEFENDANT A FAIR TRIAL. (Not
raised below.)

POINT VII

REPEATED MISREPRESENTATIONS BY THE STATE AND
ITS WITNESSES THAT THE DEFENDANT ADMITTED TO
DOWNLOADING CHILD PORNOGRAPHY AND ADMITTED
TO OFFERING/DISTRIBUTING CHILD PORNOGRAPHY
WHEN THEY KNEW THIS WAS NOT TRUE DENIED THE
DEFENDANT A FAIR TRIAL (ESPECIALLY SINCE THE
CONCEPT OF DOWNLOADING IS CONFUSING AND WAS

3

CONTINUALLY MISCHARACTERIZED BY THE STATE).
(Not raised below.)

POINT VIII

THE COURT SHOULD HAVE DEFINED "DOWNLOADING"
FOR THE JURY SINCE IT IS AN ESSENTIAL
ELEMENT OF THE ALLEGED CRIMES OF OFFERING
AND DISTRIBUTING CHILD PORNOGRAPHY WITH A
COMPUTER AND PROVIDED THE JURY WITH THE
STATUTORY DEFINITION OF A "FILE-SHARING
PROGRAM." (Not raised below.)

Because defendant's statement to police, given after Miranda[1]

warnings, was redacted and admitted into evidence pursuant to an

agreement between his counsel and the prosecution, and his

remaining arguments are without merit, we affirm.

The State's case at trial consisted of the testimony of

members of New Jersey's Internet Crimes Against Children Task

Force, who explained how they monitor online networks for child

pornography and track individual users on those networks;

forensic examiners, who explained what they found on defendant's

computers; and two members of the State Police, who took

defendant's recorded statement.

The Task Force members described how peer-to-peer file

sharing over the internet works.  They explained that peer-to-

peer file-sharing networks allow users with specific free

---

[1]  Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

software programs available on the internet, such as FrostWire, to transfer and download files from the computers of other users on the network.  They also explained how they infiltrate those networks using specialized software to find files identified by the National Center for Missing and Exploited Children as containing child pornography.

A Task Force member testified he was monitoring that software on January 27, 2012, when he discovered that a user in South Jersey not only possessed files identified by the National Center as child pornography but was sharing those files with other users by keeping them on his computer in a publicly-shared folder.  After pinpointing the Internet Protocol (IP) address associated with the files, the detective initiated a single-source download from that user by connecting to that IP address and downloading three video files.

After confirming the files contained child pornography, the detective sent a subpoena to the internet service provider owning the IP address for the identity of the subscriber.  The provider, Verizon, advised the IP address belonged to a customer in Mount Ephraim.  Following record checks and surveillance to identify all persons residing at the Mt. Ephraim address, State Police applied for a search warrant for the residence.  A

tactical team executed the warrant at 6:00 a.m. on a day in early March.

After providing the assembled members of the household with Miranda warnings, the sergeant in charge told the family he was searching for evidence of child pornography. Defendant, a nephew of the couple who owned the home, told the sergeant he could help in the investigation. After defendant advised he had viewed images of children on the computer in his bedroom, defendant was arrested and taken in for questioning.

While defendant was being taken into custody, another detective conducted what he described as a forensic "preview" or "snapshot" of the two computers in defendant's bedroom. Using specialized forensic software, the detective testified he was able to identify one of the computers by its Global Unique Identifier as the exact machine from which the police downloaded the three video files on January 27th. The detective was also able to confirm that two of those files were still on defendant's computer, although apparently deleted by the user. State Police examiners ultimately identified 265 files containing child pornography on defendant's computers, 221 videos and 44 photographs.

At the station, defendant was again provided his Miranda rights and gave a lengthy recorded statement to police. Before

6

the statement was played for the jury, the judge confirmed on the record that there was "no issue of voluntariness or anything else that I otherwise would have to — to rule on." Both counsel advised the court that the redacted statement was the product of extensive negotiations conducted over several months, with defense counsel confirming "[f]or the record" that they had "com[e] to an agreement on it."

In the statement, defendant acknowledged he was under arrest for possession of child pornography "[b]ecause there's illegal things on my laptop." He claimed a friend downloaded the images onto his computer and that "[i]nstead of reporting it[,] I thought I could delete it." Defendant explained he "downloaded FrostWire" because he was "cheap, and [he did not] wanna pay for an Apple card to download . . . music." When asked how many times he knowingly looked at child pornography, defendant replied, "[m]aybe um, a few times I, I did know some, somethin' was ah, not right. I'll man up, and I'll say that I knew a few times. But the other things, no."

Defendant explained that he used to download music "on LimeWire" and that "[u]nfortunately, well you can download videos too." He told investigators he "did download music videos" and "did download Torrents, which is ah, movies." After "LimeWire got shut down. . . . a friend recommend[ed]

FrostWire."  Defendant described FrostWire as "basically the ugly cousin of LimeWire."  He claimed when he "typed up random sexual word[s] in the [program's] search bar" that:

> everything came up, it came up um, college girls, girls gone wild. Um, basically, in the his . . . if you could think of, came up in that title, whatever you know.  I clicked everything.  Everything, everything, everything.  Clicked it all.  Didn't need read the titles.  Clicked it.  However, you know, something came up.  This P[re]T[een] crap.  Gained your curiosity.  You know when you clicked it, it said ah, eighteen year old fondle something, whatever.  But when you clicked it, the girl wasn't eighteen. You could just tell off the bat.  And it gains your curiosity.  Like it, it's not like it's [a] sick twisted thing you have going, it just gains your curiosity, like what the hell is this?  It's something that you don't see everyday.  It's something, you know, it just went from there.  I, no one really taught, I could give you the titles that came up, when you type in that one word. It came up um, the nymph, [inaudible] nymphent comes up, nymphets, which is a female, young, you know, it's I looked it up.

Although defendant claimed he got started with his friend downloading things onto his computer, he admitted "that was a year or some ago" and was not related to matters he was being asked about.  When presented with a screenshot of what detectives found in his shared folder, defendant said, "this was my shared, this, is yeah, this is mine."

A forensic examiner with the FBI assigned to the New Jersey Regional Forensics Laboratory described how he imaged the hard drives of defendant's computers, located possible images and videos of child pornography and evidence of the file-sharing programs LimeWire and FrostWire. The examiner explained how he used a virtual machine, a piece of software that allows the user to see the computer exactly "how the user would see it, the shortcuts that they created, the icons and files that they created. . . . just like if I were to turn on the laptop and start it up." The examiner identified screenshots of defendant's FrostWire program as it would have appeared to defendant on the date his computer was seized, which reflected in yellow highlighting that he was "sharing 12 files."

Using other forensic tools, the examiner was able to testify that on January 26, 2012, beginning at 11:00 p.m., the day before a member of the Internet Crimes Against Children Task Force first detected child pornography on defendant's computer, the user of the computer downloaded the FrostWire program and the three child pornography files detected and accessed the following day. Following those downloads, the user accessed defendant's Facebook account and visited adult pornography and dating websites into the early morning hours.

The examiner conceded on cross-examination that defendant's computers were not password protected and that anyone in his household could have accessed his computers and logged in under his user name. The examiner also confirmed that two of the three files investigators accessed on January 27th had been deleted from defendant's computer by the time State Police executed its search warrant several weeks later.

The defense theory was that someone else downloaded the illegal images to defendant's computer. The defense presented defendant's girlfriend and his grandmother, who testified that defendant was not at his aunt and uncle's house in Mt. Ephraim on the dates the State claimed child pornography files were downloaded to defendant's computer in 2012. During January and February 2011, when defendant claimed the friend who downloaded the images to his computer was staying at his aunt and uncle's house, another relative of defendant's testified defendant spent weekends at her house in Pennsylvania assisting in her landscaping and excavating business. The witness explained that most of her employment records were lost in a flood in 2012, but that she saw a document relating to monies she owed defendant for work during 2011 that enabled her to testify with certainty that he was at her house on those dates.

A-3437-15T2

The document used to refresh the witness's recollection was a photograph of a text message from defendant to his grandfather asking him to write down the weekends defendant was working in January and February 2011 so he would be sure to get paid for his time. Although the court permitted defendant to use the text message to refresh the witness's recollection, the document was not admitted because it was hearsay not subject to any exception.

In closing, defendant's counsel argued that defendant discovered some illegal images on his computer and deleted what he saw, consistent with his statement to the police. Counsel used the statement to argue defendant had been forthright about seeing some of the images placed on his computer by a friend, and that defendant's interrogators lied to him about what they found on his computer in urging him to admit that he downloaded the images. Counsel contended defendant never admitted to downloading any illegal images and criticized the police for not investigating the friend responsible for all the illegal material found on defendant's computers. He argued defendant was not tech savvy, did not understand the concept of shared files and had no intent to offer or distribute child pornography.

The prosecution made extensive use of defendant's statement in its summation, re-playing several excerpts. The prosecutor argued the forensic experts identified 265 files containing child pornography on defendant's two computers, refuting any claim that defendant accidentally accessed the material his friend had downloaded the year before and quickly deleted it. The State conceded some files had been deleted, but asserted defendant continued to download child pornography until January 26, 2012, long after his friend moved out.

As previously noted, the jury convicted defendant on all counts charged.

The issues defendant raises in Points I, II, III, and VI relating to the admission at trial of his redacted statement to police are without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2).

Defendant did not raise a challenge to the voluntariness of his statement to the police in the trial court. He instead advised the court he agreed with the prosecution that the statement should be admitted at trial with the redactions his counsel negotiated. Accordingly, the issues he now raises as to the failure of the court to conduct a N.J.R.E. 104 hearing on the statement's admissibility, the voluntariness of the statement, the failure to play the entire statement for the jury

and the failure to redact certain statements made by his interrogators are all barred by the doctrine of invited error. See N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 340 (2010) (explaining that "'[t]he doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error'") (quoting Brett v. Great Am. Recreation, 144 N.J. 479, 503 (1996)).

As the Supreme Court explained in State v. Jenkins, "a defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought . . . claiming it to be error and prejudicial." 178 N.J. 347, 358 (2004) (citation and internal quotation marks omitted). That is precisely what defendant attempts here.

It is clear from reading the record that defendant used the statement in crafting his defense to the charges. His counsel urged the statement showed defendant was honest in admitting to police he stumbled onto illegal images downloaded to his computer by a friend, and that he tried to delete those images from his computer, not offer or distribute them to others.

Counsel argued the statement also showed police never bothered to investigate defendant's claim about the friend once defendant admitted to viewing the images, concluding "[t]hey had their man." Instead, interrogators minimized the trouble defendant was in, told him they knew he was guilty and tried to browbeat him into admitting he downloaded the images, which, counsel argued, the statement proved he never did. Having made the statement a critical element of his defense, defendant is precluded from arguing its admission requires reversal of his conviction. See State v. A.R., 213 N.J. 542, 561-63 (2013).

We further reject the claim defendant raises in Point IV that the prosecutor's comments in summation regarding defendant's failure to disavow the contents of the files on his shared folder in the course of his interrogation violated his right to silence. As the Court recently explained in State v. Kucinski, once a defendant has waived his right to remain silent, "cross-examination regarding facts to which he testified at trial, but omitted in his statement to police, was proper." 227 N.J. 603, 623 (2017) (citing United States v. Fambro, 526 F.3d 836, 842 (5th Cir.) ("A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or[ ] demerits, and not on some artificial standard that only the part that helps him can be later referred to." (quoting

<u>United States</u> v. <u>Goldman</u>, 563 <u>F.</u>2d 501, 503 (1st Cir. 1977),

<u>cert. denied</u>, 434 <u>U.S.</u> 1067, 98 <u>S. Ct.</u> 1245, 55 <u>L. Ed.</u> 2d 768

(1978))), <u>cert. denied</u>, 555 <u>U.S.</u> 1050, 129 <u>S. Ct.</u> 625, 172 <u>L.</u>

<u>Ed.</u> 2d 617 (2008)).  Similarly here, there was nothing improper

in the prosecutor's use of defendant's statement, both what he

said and what he did not say, in her closing remarks.

We likewise are not persuaded that statements "by the

[S]tate and its witnesses that the defendant admitted to

downloading child pornography and admitted to

offering/distributing child pornography" were misrepresentations

that denied defendant a fair trial, as he argues in Point VII of

his brief.  Although defense counsel argued defendant never

admitted to downloading or distributing child pornography in his

statement, parts of that statement could fairly be construed as

admissions that he downloaded illegal images of children to his

computers and left those images in a shared file that could be

accessed by others.[2]  Accordingly, we view the statements as only

---

[2]  For example, defendant talked about a video involving "[t]his
little girl" who "looked just like my daughter," who was four
years old.  Defendant claimed the video disgusted him, stating,
"[w]hat that sick son of a bitch did to her."  When defendant
claimed he "click[ed] out of it immediately," the interrogator
confronted him saying, "you watched it long enough to see what
he did and you watched it long enough to hear what he said."
Defendant replied, "[n]o, no, no, no.  I didn't fully download
it."  Defendant also told interrogators that he installed

fair comment on the evidence and not mischaracterizations of the record. See State v. Cole, 229 N.J. 430, 457 (2017).

We find no error in the trial court's refusal to admit the text message used to refresh defendant's relative's recollection as to when defendant stayed at her house in 2011, which defendant raises in Point V. N.J.R.E. 612 permits an adverse party to introduce those portions of the writing which relate to the testimony of the witness for the purpose of impeaching the witness, but provides no right in the party calling the witness to introduce the writing as substantive evidence on any issue. See Showalter v. Barilari, Inc., 312 N.J. Super. 494, 514 (App.

---

LimeWire, "cause I downloaded music." Describing to the interrogators how he went from downloading music to having illegal images of children on his computer, defendant explained that in FrostWire, "you can click images um all types, just Torrents and crap like that, download whatever. . . . Well you go to all types and you type in a song name that represents a sexual position or sexual body part, videos come up. . . . You put that up there, wow all these girls ah, these videos come up, click the video, then you just go back and click images, type in a image with ah title, somethin' come up. And that's how you get introduced to it."

As to his shared folder, when the interrogator explained that "the files we're interested in when . . . we're looking to see what's in your folder when we start seeing P[re]T[een]H[ard]C[ore], PTHC, PTHC, PTHC," defendant acknowledged what he was being shown was "a snapshot of [his] shared folder." When the interrogator confirmed "that's, that's your folder there," defendant responded, "Yeah, I know. I, like I said I tried deleting the crap and doing the forgive and forget part but . . . ."

Div. 1998).  The document, a purported photograph of a text message sent from defendant to his grandfather, was obviously hearsay offered to prove the truth of the matter asserted, that defendant was not at home when illegal images were downloaded to his computer.  Although defendant argues it could have been admitted as a business record, N.J.R.E. 803(c)(6), even were that so, a point we do not concede, it was not offered as such, and no apparent effort was made to subpoena the text from defendant's cell phone carrier, the only entity that might keep such a record in the ordinary course of its business.

Finally, we reject defendant's argument, raised in Point VIII, that the court should have defined "downloading" and "file-sharing" for the jury.  Defendant argues the failure to define those terms "in this case, where proofs were laden with technical terms and concepts, likely left the jury confused and left [it] believing that the State had no standard to reach or burden to prove anything in this area."  Because defendant failed to object to the court's charge, we review his argument on this point under the plain error standard, meaning we disregard such errors unless "clearly capable of producing an unjust result."  R. 2:10-2; State v. Daniels, 182 N.J. 80, 95 (2004).

17

Defendant was charged with violating <u>N.J.S.A.</u> 2C:24-4b(5)(a) and 2C:24-4b(5)(b), which at the time of his crimes provided[3] as follows:

> (a) Any person who knowingly receives for the purpose of selling or who knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers or agrees to offer, through any means, including the Internet, any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, is guilty of a crime of the second degree.
>
> (b) Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, including on the Internet, is guilty of a crime of the fourth degree.

---

[3] The statute was restructured in 2013 to provide, among other things, that a person commits a crime if, by any means, including the Internet, he knowingly distributes or possesses an item depicting the sexual exploitation or abuse of a child or stores and maintains such an item using a file-sharing program. <u>See</u> <u>L.</u> 2013, <u>c.</u> 136, § 1. The amended statute includes definitions of "distribute," "file-sharing program," "item depicting the sexual exploitation or abuse of a child" and "peer-to-peer network." <u>Ibid.</u>

Contrary to the arguments made throughout defendant's brief, neither "downloading" nor "file-sharing" is an element of those crimes, and thus were not required to be separately charged. See R. 1:8-7(b); State v. Green, 318 N.J. Super. 361, 375 (App. Div. 1999), aff'd, 163 N.J. 140 (2000).

As Judge Lisa explained in State v. Lyons, the acts prohibited by the operative words in the former N.J.S.A. 2C:24-4b(5)(a), although not defined in the Code, carried with them a commonly understood plain meaning. 417 N.J. Super. 251, 260 (App. Div. 2010). Analyzing the various amendments to the statute as "evinc[ing] a clear legislative intent to prohibit 'any means' of dissemination of child pornography, specifically including over the Internet and specifically including computer 'files' containing such materials," we held in Lyons that "[c]onsideration of the terms in the statute in light of these legislative initiatives impels us to conclude that the terms should be construed very broadly." Id. at 262. Accordingly, we disagree with defendant's premise that he could not have been convicted of either offering or distributing child pornography without having "downloaded" illegal images to his computer.

As in Lyons, "[t]he evidence of what defendant did, while knowing what he knew, is the kind of conduct targeted by these enactments. Defendant used the modern technology of computers

and the Internet, with a file sharing network, to provide and offer child pornography he possessed in his shared folder." Ibid. Although those aspects of the State's case describing the efforts of law enforcement to detect child pornography on the internet and track its purveyors were highly technical, the testimony about the various ways an individual with a computer views, downloads and shares music, photos and videos over the internet would be readily understood by most jurors. See State v. Miller, 449 N.J. Super. 460, 468 (App. Div. 2017).

We could in no event conclude the judge's decision to instruct the jury in accordance with the model charges for possessing, offering and distributing child pornography was clearly capable of producing an unjust result here. R. 2:10-2. Rather, defendant's failure to interpose a timely objection to the court's charge "constitutes strong evidence that the error belatedly raised here was actually of no moment." State v. Tierney, 356 N.J. Super. 468, 481 (App. Div.) (quotation omitted), certif. denied, 176 N.J. 72 (2003).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3437-15T2