# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*

**UNITED STATES, Appellee**
**v.**
**Sergeant RYAN M. GORSKI**
**United States Army, Appellant**

ARMY 20100480

Headquarters, Fort Drum
Andrew Glass, Military Judge
Lieutenant Colonel Michael O. Lacey, Staff Judge Advocate

For Appellant:  Captain Aaron R. Inkenbrandt, JA (argued); Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Kristin B. McGrory, JA (on brief).

For Appellee:  Captain Daniel H. Karna, JA (argued); Major Amber J. Roach, JA; Major LaJohnne A. White, JA; Captain Julie A. Glascott, JA (on brief); Major Robert A. Rodrigues, JA.

19 December 2012

------------------------------------
OPINION OF THE COURT
------------------------------------

BURTON, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(A) (2006), one specification of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2) (2006), two specifications of transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) (2006), and one specification of obstructing justice, each in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2006) [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge, confinement for thirty months, and reduction to the grade of E-1.  The convening authority approved only fifteen months of appellant's sentence to confinement in accordance with appellant's pretrial agreement and approved the remainder of the sentence as adjudged.

This case is before the court for review under Article 66, UCMJ. We have considered the record of trial, appellant's assignments of error, the government's answer, and the matters discussed during oral argument. We find a substantial basis in law and fact for questioning appellant's plea to distribution of child pornography and will provide relief in our decretal paragraph.

**BACKGROUND**

Specification 3 of The Charge alleged the following offense:

> In that Sergeant (E-5) Ryan M. Gorski, U.S. Army, did, between on or about 27 May 2008 and on or about 25 June 2009, at or near Fort Drum, New York, a place under exclusive or concurrent federal jurisdiction, knowingly distribute, by making available for downloading from his personal computer by another, via a peer-to-peer file sharing network, fifteen (15) images and seventeen (17) video files of visual depictions of minors engaging in sexually explicit conduct, conduct using a means and facility of interstate commerce, in violation of 18 USC § 2252A(a)(2), such conduct being prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces.

At the beginning of appellant's plea, the military judge recognized that a potential issue existed with the term "distribution" as it related to Specification 3 of The Charge. In fact, the military judge detailed on the record the discussion he had with the parties during Rule for Courts-Martial [hereinafter R.C.M.] 802 sessions. The military judge noted that *United States v. Christy*, 65 M.J. 657 (Army Ct. Crim. App. 2007), "appears to hold that merely putting those images in a shared file that goes out through the LimeWire process constitutes enough for delivery and that you don't need any actual delivery under the CPPA [Child Pornography Prevention Act] to have distribution." The military judge then stated that *United States v. Craig*, 67 M.J. 742 (N.M. Ct. Crim. App. 2009), "holds otherwise." The military judge next stated that *United States v. Kuemmerle*, 67 M.J. 141 (C.A.A.F. 2009), "appears to indicate that *Christy* may be wrong here." Finally, the military judge noted "that there is no controlling authority that says that *Christy* is inaccurate or has been overturned in any way [and] [t]he court believes it's bound by *US v. Christy* in its holding." The military judge concluded his recap of the R.C.M. 802 sessions by stating that he would "use the common definition of distribution, which is that which is in the Manual for Courts-Martial."

When the military judge asked the trial counsel to announce the general nature of the charges, the trial counsel replied that one specification involved "distribution

of child pornography in violation of 18 United States Code, Section 2252 Alpha." Later on during the providence inquiry, the military judge informed appellant of the elements of Specification 3 of The Charge, and asked appellant how did he "attempt to distribute those images?" Appellant responded that the images "were available for download in [his] share[d] folder that was created on the—from the LimeWire program . . . ." The military judge then defined "distribution" for appellant, and advised that "'[d]istribute' means to deliver to the possession of another." The military judge later clarified that "the way [appellant] distributed these images and videos was [appellant] made them available to be downloaded [from appellant's] shared file[.]"

Appellant explained to the military judge how images and videos could be obtained from his LimeWire shared folder:

> What it was, sir, is once the—once I downloaded a video off the program, it automatically went into the shared file, which then, if somebody on the network anywhere in the world wanted to download that same file, they could just—the system would automatically go into my file and pull it out and download it to their computer.

Appellant later confirmed that he knew others could download images and videos containing child pornography from his LimeWire shared folder. Appellant also admitted that he could have removed the contraband files from his shared folder, which would have precluded others from accessing and downloading them. Appellant stated that he intentionally left files containing child pornography in his shared folder.

Ultimately, appellant did not know if another user downloaded any files containing child pornography from him:

> MJ: Now, you don't know, as you sit here, that someone actually downloaded those videos from your shared file; is that correct?
>
> Acc: Roger, sir.
>
> MJ: But you believe it's possible—
>
> Acc: Yes, sir.
>
> MJ: —that they're out there and they could have been downloaded?

Acc:  Yes, sir.

MJ:  And I guess the other way to put it is you don't know that they weren't downloaded from your shared file; is that correct?

Acc:  Yes, sir.

Near the end of the providence inquiry, appellant reiterated that he knowingly distributed child pornography by allowing unknown persons access to contraband files from his shared folder.

As part of his pretrial agreement with the convening authority, appellant entered into a stipulation of fact.  The stipulation of fact contained the following information pertinent to Specification 3 of The Charge:

> A person interested in sharing child pornography with others in the P2P [peer-to-peer] network, need only place those files in his 'shared' folder.  Those child pornography files are then available to all users of the P2P network for download regardless of their physical location.  The accused accessed child pornography from others in the same way.
>
> The accused made some of the images and videos depicting child pornography that he had downloaded from 'Limewire' available for other users to download by placing them in shared folders on both of his computers.  At times, the accused left the 'Limewire' program on and available for others to access.  The accused estimates that at one time he possessed between 20 (twenty) and 50 (fifty) videos and images that depicted children engaging in sexual acts with other children and adults.  The accused knew this because he viewed, stored and categorized the images on his computer. . . .
>
> . . . A person that includes child pornography in his 'shared' folder is hosting child pornography and therefore is promoting, presenting, and distributing child pornography.

Finally, the stipulation of fact contained the following entry after listing the elements of Specification 3 of The Charge:  "Definitions:  Adopt 18 USC 2256[;] Distribution See U.S. v. Christy, 65 M.J. 657 re: Mens Rea."

**LAW AND DISCUSSION**

The question before this court is one of first impression within our jurisdiction and provides us an opportunity to clarify *Christy*: whether an appellant who places and maintains electronic files containing child pornography in a shared folder accessible to others via a peer-to-peer file-sharing software program can be convicted of "distributing" child pornography under § 2252(A)(a)(2) or clauses one or two of Article 134, UCMJ, where there is no evidence that a third party actually downloaded or obtained appellant's contraband files. For the reasons that follow, we answer this question in the negative.

*A. Standard of Review*

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) (citing *United States v. Inabinette*, 66 M.J. 320, 321 (C.A.A.F. 2008)). A military judge can abuse his discretion if he accepts a guilty plea "without an adequate factual basis to support it" or if he accepts a guilty plea based upon "an erroneous view of the law." *Id*. (citation omitted). Upon review, "a guilty plea will be rejected only where the record of trial shows a substantial basis in law and fact for questioning the plea." *United States v. Aleman*, 62 M.J. 281, 283 (C.A.A.F. 2006) (quoting *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F. 2005)). "If an accused's admissions in the plea inquiry do not establish each of the elements of the charged offense, the guilty plea must be set aside." *Weeks*, 71 M.J. at 46 (citing *United States v. Gosselin*, 62 M.J. 349, 352–53 (C.A.A.F. 2006)). In reviewing the providence of appellant's plea, we consider the providence inquiry, the stipulation of fact, as well as the inferences that can be drawn from them. *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citing *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F. 2004)).

*B. Analytical Framework to Use in Defining "Distribution"*

18 U.S.C. § 2252A(a)(2) punishes:

> Any person who knowingly . . . distributes (A) any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or (B) any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

The federal statute criminalizing the distribution of child pornography does not define the term "distribute." "In the absence of a statutory definition, we consider three sources: (1) the plain meaning of the term distribute; (2) the manner in which Article III courts have interpreted the term; and (3) guidance, if any, the UCMJ may provide through reference to parallel provisions of law." *Kuemmerle*, 67 M.J. at 143.

First, in the context of a prosecution under § 2252A(a)(2), our superior court looked to *Black's Law Dictionary* and Merriam-Webster in determining the plain meaning of the term distribute:

> *Black's Law Dictionary* defines 'distribute' as '1. To apportion; to divide among several. 2. To arrange by class or order. 3. *To deliver*. 4. To spread out; to disperse.' [citation omitted and emphasis in original]. Merriam-Webster provides the following definition: 'to divide among several or many: deal out . . . to give out or deliver especially to the members of a group.' [citation omitted].

*Kuemmerle*, 67 M.J. at 143–44. The court also identified that "[a]s an example in common usage, distribute means 'to distribute magazines to subscribers.'" *Id*. at 144 (citation and internal punctuation marks omitted). Similarly, "distribute," under the Model Federal Jury Instructions, means "to deliver or transfer possession of [something] to someone else, with or without any financial interest in the transaction." *Craig*, 67 M.J. at 745 (citation omitted).

Second, our review of the decisions from Article III courts reveals that distribution convictions under § 2252 via file-sharing software culminate in another person actually downloading contraband files. For example, *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012), is illustrative. In *Budziak*, a jury convicted the defendant of distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2)(A) and 2252(b)(1). *Id*. at 1107. Undercover agents from the Federal Bureau of Investigation (FBI) downloaded illegal files via file-sharing software from an Internet Protocol (IP) address registered to the defendant. *Id*. The court held the following:

> Following the First, Eighth, and Tenth Circuits, we hold that the evidence is sufficient to support a conviction for distribution under 18 U.S.C. § 2252(a)(2) when it shows that the defendant maintained child pornography in a shared folder, knew that doing so would allow others to download it, and *another person actually downloaded it*.

*Id.* at 1109 (citations omitted and emphasis added). A review of the relevant case-law indicates that an actual download of child pornography by a third-party directly from an accused completes a distribution offense under § 2252A. *See, e.g.*, *United States v. Shaffer*, 472 F.3d 1219, 1224 (10th Cir. 2007) (finding that defendant distributed child pornography, in part, because an undercover federal law enforcement official "had no trouble whatsoever picking and choosing for download images and videos from [defendant's] child pornography collection."). *See also Kuemmerle*, 67 M.J. at 144 (finding distribution of child pornography based upon two acts: "(1) the posting of the image, whereby the image left the possession of the original user, and (2) delivery of the image, whereby another user accessed and viewed the image."); *Christy*, 65 M.J. at 663 (finding distribution of child pornography, in part, because appellant "had no doubt other LimeWire users had downloaded child pornography from his computer" and a FBI agent "'actually downloaded' a video file containing child pornography from his computer using LimeWire peer-to-peer file-sharing software.").

Third, the interpretation of the term "distribute" under Article 112a, UCMJ, provides insight and guidance regarding how it should be interpreted under § 2252. In fact, the military judge defined distribution as delivery to the possession of another, which was drawn from the definition of distribution under Article 112a, UCMJ. In the context of wrongful distribution of a controlled substance, the term "distribution" connotes both an "offer" and a "delivery." *Kuemmerle*, 67 M.J. at 144.

*C. Application of the Analytical Framework Used to Define "Distribution"*

After reviewing the plain meaning of the term "distribution," the manner in which Article III courts have interpreted "distribution," and the guidance provided by the interpretation of the term "distribution" under narcotic laws, we agree with the interpretation of the term "distribution" under § 2252 as provided by our sister court in *Craig*. We hold that distribution of child pornography files requires the files to have been transferred or delivered to the possession of another via peer-to-peer file-sharing software programs.

First, as identified and stressed in *Kuemmerle*, the plain meaning of the term "distribute" means "to deliver." Here, there are no facts demonstrating that appellant transferred or delivered files containing child pornography to anybody.

Second, Article III courts such as *Budziak* and *Shaffer* cite to the fact that a law enforcement official successfully downloaded a contraband file from the defendant in upholding child pornography distribution convictions under § 2252. This supports the conclusion that distribution under § 2252 requires another person to have actually downloaded child pornography files from appellant's shared folder.

This conclusion is also consistent with the plain meaning of the term distribute because it requires a transfer or delivery of the material to the possession of another.

In its written submission before this court, the government cited many cases involving the definition of "distribution" for purposes of a sentence enhancement under U.S. Sentencing Guidelines Manual § 2G2.2(b) (2009). The U.S. Sentencing Guidelines Manual defines "distribution" as follows:

> 'Distribution' means any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S. Sentencing Guidelines Manual § 2G2.2, cmt. n.1 (2009).

However, this definition of "distribution" provides little insight to the statutory definition used in § 2252 because the Sentencing Guidelines define and interpret distribution more broadly than how it is interpreted under § 2252. *United States v. Ramos*, 695 F.3d 1035, 1044 (10th Cir. 2012). Stated differently, the statutory term of distribution under § 2252 "has a distinct meaning and is not as broad as the same term" as used in U.S. Sentencing Guidelines Manual § 2G2.2(b) (2009). *Id.* In fact, none of the cases cited by the government using this definition of "distribution" involved the distribution of child pornography under § 2252. *See United States v. Bolton*, 669 F.3d 780 (6th Cir. 2012); *United States v. Layton*, 564 F.3d 330 (4th Cir. 2009); *United States v. Carani*, 492 F.3d 867 (7th Cir. 2007); *United States v. Griffin*, 482 F.3d 1008 (8th Cir. 2007); *United States v. McVey*, 476 F.Supp.2d 560 (E.D. Va. 2007). Thus, the definition of "distribution" used in § 2G2.2(b) of the United States Sentencing Guidelines Manual provides no assistance in ascertaining the definition of "distribution" for purposes of § 2252.

Third, the definition of the term "distribute" in the context of Article 112a, UCMJ, supports the conclusion that an actual download of a contraband file by another is required for a conviction under § 2252. In fact, military cases involving the distribution of controlled substances include the actual transfer or delivery of drugs into the possession of another. *See, e.g.*, *United States v. Speer*, 40 M.J. 230, 232–33 (C.M.A. 1994) (finding that appellant aided and abetted cocaine distribution based upon evidence of his conduct after the transfer of cocaine by a third party but prior to completion of the exchange of money); *United States v. Ratleff*, 34 M.J. 80, 82 (C.M.A. 1992) (finding that appellant distributed marijuana when he passed it to a fellow soldier); *United States v. Pritchett*, 31 M.J. 213, 219 (C.M.A. 1990)

(finding that appellant aided and abetted marijuana distribution even though his wife actually delivered marijuana to another because appellant was present during the transactions and allowed them to occur in his home); *United States v. Knudson*, 14 M.J. 13, 15 (C.M.A. 1982) (recognizing that an accused need not know in advance of the particular transfers or the parties to whom the transfers would be made to be found guilty of drug distribution); *United States v. Figueroa*, 28 M.J. 570, 572–73 (N.M. Ct. Crim. App. 1989) (upholding the legal sufficiency of a conviction for cocaine distribution even though appellant did not personally deliver the cocaine because appellant was liable for the delivery of cocaine from one co-conspirator to another co-conspirator within the same conspiracy).

The military judge interpreted *Christy* to mean that simply making files available via peer-to-peer software constituted distribution. In other words, the military judge believed that delivery of the files to a third-party was not necessary for distribution to occur under § 2252A. Instead, distribution occurred in *Christy* precisely because an actual delivery to a third-party via peer-to-peer software occurred. Appellant's case presents a different factual scenario than *Christy*. Simply put, if a third-party downloads child pornography files from another via peer-to-peer file-sharing software (as occurred in *Christy*), then an actual distribution occurred because material transferred to the possession of another. On the other hand, if a person merely makes child pornography available on a peer-to-peer network without any evidence that another actually downloaded a file (as occurred here), then distribution did not occur for purposes of § 2252A.

Moreover, our holding is consistent with *Shaffer*, *Kuemmerle*, and *Christy*. Again, *Shaffer*, *Kuemmerle*, and *Christy* all resulted in a law enforcement agent actually downloading and receiving an image or video containing child pornography. *Craig*, 67 M.J. at 745. All three cases involved an individual who shared files containing child pornography with a third-party law enforcement agent. In contrast, appellant here merely made contraband files available to third parties; however, making files available to a third party is not the same as distributing files to a third party. Distribution, in the context of § 2252, requires an accused to actually share and transfer files versus just simply making them available for others. *See Craig*, 67 M.J. at 746 (concluding that the court lacks the "authority to include incomplete transfers of possession within the meaning of 'distribute' as it relates to child pornography."). In sum, we conclude there is a substantial basis in law and fact to question appellant's guilty plea to distribution of child pornography because his actions in merely making files available for download via peer-to-peer file-sharing software programs cannot amount to distribution as a matter of law.

This is not to say that appellant's actions are immune from criminal liability. To the contrary, appellant's conduct could be potentially criminal under a number of different theories. For example, appellant's conduct could potentially be criminal as an offer to distribute child pornography under 18 U.S.C. § 2251(d)(1)(A) (2006).

9

*See United States v. Sewell*, 513 F.3d 820, 822 (8th Cir. 2008) (finding that in the context of a file-sharing program, placing a file containing child pornography in a shared folder with descriptive text in the title of the file "is clearly an offer to distribute the file."). In addition, appellant's conduct could also potentially be criminal as an advertisement or promotion of child pornography under 18 U.S.C. § 2252A(a)(3) (2006).[1] These other possibilities, which are part of the same statutory scheme as § 2252A and reflect Congressional intent to protect children from sexual exploitation, highlight that a broad definition of distribution under § 2252A is unnecessary, as other provisions within the same statutory scheme address and criminalize appellant's conduct. *See Craig*, 67 M.J. at 745 (finding that there is no need "to impute a broader definition of the term 'distribute' than Congress or the federal courts have provided . . . in part, because Congress has specifically provided statutory prohibitions against promoting or offering child pornography, and against its attempted distribution.") (citations omitted).

Finally, appellant's conduct in making child pornography files available for download via a peer-to-peer file-sharing program could be punishable as a clause one or clause two offense under Article 134, UCMJ. In fact, Specification 3 of The Charge alleged appellant's conduct violated clause one or clause two of Article 134, UCMJ. However, the focus of the providence inquiry as it related to clauses one and two of Article 134, UCMJ, centered on the parties' understanding that appellant's conduct was prejudicial to good order and discipline or service-discrediting because it constituted distribution. Stated differently, the military judge never informed appellant that simply making child pornography files available for downloading on a peer-to-peer file-sharing network alone could be prejudicial to good order and discipline or service-discrediting separate and apart from the § 2252A offense.[2]

---

[1] In fact, appellant did stipulate that placing child pornography in his Limewire "shared" folder constituted the promotion of child pornography. However, we cannot uphold a § 2252A(a)(3) conviction because the government did not charge appellant with such an offense and the military judge never advised appellant of this offense. *See United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (stating that "an accused has a right to know to what offense and under what legal theory he or she is pleading guilty.").

[2] A military judge has an affirmative obligation to advise an accused and to elicit facts to support all three theories of criminal liability, separate and apart from each other, under Article 134, UCMJ, if all three theories are alleged in a specification. *See United States v. Medina*, 66 M.J. 27–28 (C.A.A.F. 2008) (building upon *Martinelli* and *Mason* to emphasize that "with respect to Article 134, UCMJ, . . . an accused must also know under what clause he is pleading guilty."); *United States v. Monette*, 63 M.J. 246, 246–49 (C.A.A.F. 2006) (summ. disp.) (setting aside five

(continued . . .)

Thus, the providence inquiry in this particular case was insufficient to sustain a conviction under clause one or clause two of Article 134, UCMJ, given its focus on the term distribution in the context of the § 2252A offense. *See United States v. O'Connor*, 58 M.J. 450, 455 (C.A.A.F. 2003) (refusing to find appellant's plea provident to the lesser-included offense of clause two, Article 134, UCMJ, because "[a]ppellant's plea inquiry was focused on the question of whether or not his conduct violated the CPPA, not the question of whether or not, under the circumstances, his conduct was of a nature to bring discredit upon the armed forces.").[3]

### D.  *The Lesser-Included Offense of Attempted Distribution*

While we conclude that appellant did not distribute child pornography by simply making it available in his shared folder, we must next address whether he attempted to distribute child pornography as a lesser-included offense under Article 79, UCMJ.  Article 79, UCMJ, provides, in pertinent part, that "[a]n accused may be found guilty of . . . an attempt to commit . . . the offense charged . . . ."

---

(. . . continued)

specifications involving CPPA offenses and declining to uphold clause one and clause two offenses despite the fact that appellant believed all of his offenses were both prejudicial to good order and discipline or service-discrediting); *United States v. Martinelli*, 62 M.J. 52, 67 (C.A.A.F. 2005) (identifying that "the record must conspicuously reflect that the accused 'clearly understood the nature of the prohibited conduct' as being a violation of clause 1 and clause 2, Article 134, apart from how it may or may not have met the elements of the separate criminal statute underlying the clause 3 charge.") (citations omitted); *United States v. Mason*, 60 M.J. 15, 19 (C.A.A.F. 2004) (finding that the "clause 1 and clause 2 elements were explained to [appellant] as a basis for finding his conduct criminal apart from clause 3 and his discussions with and admissions to the military judge were made in that context.").  Concomitantly, as described above, we do not find a lesser-included offense here under either clause one or clause two because appellant was improvident to distribution whether it be clause one, two, or three.

[3] The maximum punishment for simply making child pornography files available for download via a peer-to-peer file-sharing program would be four months of confinement and forfeiture of two-thirds pay per month for four months.  *See United States v. Beaty*, 70 M.J. 39, 45 (C.A.A.F. 2011) (stating that "when confronted with Article 134, UCMJ, offenses not specifically listed, that are not closely related to or included in a listed offense, that do not describe acts that are criminal under the United States Code, and where there is no maximum punishment 'authorized by the custom of the service,' they are punishable as 'general' or 'simple' disorders").

In order to find a knowing and voluntary plea to attempted distribution of child pornography, the record of trial must reflect that the military judge explained the elements of the offense to the accused. *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003). It is error for the military judge to fail to explain the elements of the offense with the accused, unless "it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty." *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992). We look to the entire record in assessing whether an accused was aware of the elements of an offense, either explicitly or implicitly. *Redlinski*, 58 M.J. at 119 (citations omitted). Finally, "attempt is a more complex, inchoate offense that includes two specific elements designed to distinguish it from mere preparation." *Id.* (citations omitted).

To be guilty of attempted distribution of child pornography, the record must establish the following four elements:

> (1) That the accused did a certain overt act;
>
> (2) That the act was done with the specific intent to commit a certain offense under the code;
>
> (3) That the act amounted to more than mere preparation; and
>
> (4) That the act apparently tended to effect the commission of the intended offense.

*Manual for Courts-Martial, United States* (2008 ed.), pt. IV, ¶ 4.b.

In this case, no facts were elicited during the providence inquiry that appellant specifically intended to distribute child pornography by making his files available in his shared folder. In addition, nothing in the stipulation of fact indicates the requisite specific intent. Instead, the parties discussed how peer-to-peer file-sharing software worked and that appellant knew that others could potentially access files containing child pornography from his shared folder. However, there are no admissions on the record or in the stipulation of fact that demonstrate appellant specifically intended to distribute child pornography files. Absent such an admission, we cannot uphold a conviction for the lesser-included offense of attempted distribution. *See Redlinski*, 58 M.J. at 119 (concluding that appellant's guilty plea to attempted distribution of marijuana was improvident because the record did not show either explicitly or inferentially that appellant understood and had sufficient knowledge of any of the four elements of attempted distribution); *Craig*, 67 M.J. at 746 (declining to find appellant provident to the lesser-included offense of attempted distribution of child pornography because "there was neither an explanation by the military judge of the elements of attempt to

distribute, nor an inquiry into the facts necessary to support that lesser included offense."). Therefore, we will set aside Specification 3 of The Charge in our decretal paragraph.

## E. Sentence Reassessment

Our final task related to setting aside Specification 3 of The Charge is to determine what effect this has on appellant's sentence. Here, we again agree with our sister court in *Craig*. "[T]he evidence that . . . appellant was knowingly acting as a distribution node of child pornography within a larger file-sharing network would still have been correctly placed before the military judge as a matter in aggravation" under R.C.M. 1001(b)(4). *Craig*, 67 M.J. at 746. Consequently, the sentencing landscape would not change by setting aside Specification 3 of The Charge because the aggravating nature of appellant's possession of child pornography would still be before the military judge. *See United States v. Moffeit*, 63 M.J. 40, 43 (C.A.A.F. 2006) (Baker, J., concurring in the result). Simply put, the location where appellant possessed child pornography and the fact that these files were made available for others to download would be independently admissible in aggravation.

Moreover, appellant elected trial by military judge alone, and we are "more likely to be certain of what a military judge alone would have done than what a panel of members would have done." *Id.* Finally, we have experience and familiarity with appellant's remaining offenses and can reliably assess what sentence a military judge would have imposed absent Specification 3 of The Charge. *Id.* at 41 (recognizing that the Courts of Criminal Appeals have "reviewed the records of a substantial number of courts-martial involving convictions for child pornography activities . . . and [have] extensive experience with the level of sentences imposed for such offenses under various circumstances."). Therefore, we are confident that the military judge would have adjudged a sentence no less than that approved by the convening authority in this case. This is especially true because the convening authority reduced appellant's period of confinement from thirty months to fifteen months in accordance with the terms of appellant's pretrial agreement.

## CONCLUSION

The finding of guilty of Specification 3 of The Charge is set aside. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and *Moffeit*, 63 M.J. 40, to include the factors identified by Judge Baker in his concurring opinion in *Moffeit*, the court affirms the sentence as approved by the convening authority.

Senior Judge KERN, Senior Judge YOB, Judge ALDYKIEWICZ, Judge KRAUSS, and Judge MARTIN concur.

GALLAGHER, Judge, joined by Chief Judge AYRES, Senior Judge COOK, Judge HAIGHT, and Judge MORAN, concurring in part and dissenting in part:

I agree with the majority to the extent they hold that distribution of child pornography files under 18 U.S.C. § 2252A(a)(2) requires the files to have been transferred or delivered to the possession of another via peer-to-peer file-sharing software programs. However, I respectfully depart from the majority because I would affirm the clause one and clause two offenses of Article 134, UCMJ, as contained in Specification 3 of The Charge. *See United States v. Mason*, 60 M.J. 15, 18–20 (C.A.A.F. 2004) (striking a clause three violation and upholding a violation of clauses one and two); *United States v. O'Connor*, 58 M.J. 450, 454 (C.A.A.F. 2003) (recognizing that an improvident plea to a clause three offense under Article 134, UCMJ, may still be upheld as a provident plea to a lesser-included offense under clauses one or two).

In this case, clauses one and two are proper bases of liability for affirming Specification 3 of The Charge. Both clause one and clause two of Article 134, UCMJ, are lesser-included offenses of the charged offense and provide alternate theories of liability for the violation of Article 134, UCMJ, to which appellant knowingly and voluntarily pleaded guilty.

The specification itself established that the distribution charged was the act of making child pornography files available for download by others via peer-to-peer file-sharing software. Prior to arraignment, the military judge noted a potential conflict in the Child Pornography Prevention Act (CPPA) law based on this definition of distribution. "Essentially, *US v. Christy* appears to hold that merely putting those images in a shared file that goes out through the LimeWire process constitutes enough for delivery and that you don't need any actual delivery under the CPPA to have distribution." Fully understanding this method of distribution was the essence of his crime, appellant pled guilty as charged. The military judge advised appellant that the distribution was by making child pornography available for download. The providence inquiry focused on making child pornography available for download as the sole method of distribution. The stipulation of fact also fully establishes making child pornography available as the method of distribution envisioned by the parties.

Appellant told the military judge at the outset of the providence inquiry into Specification 3 of The Charge that he attempted to distribute images of child pornography by making them available for download from his Limewire shared folder. The exchange below then followed appellant's initial statement:

14

MJ: . . . Now, you said the way that you distributed these images and videos was you made them available to be downloaded in your shared file?

Acc: Yes, sir.

MJ: And how would that work?

Acc: What it was, sir, is once the—once I downloaded a video off the program, it automatically went into the shared file, which then, if somebody on the network anywhere in the world wanted to download that same file, they could just—the system would automatically go into my file and pull it out and download it to their computer.

Appellant later confirmed that he knowingly left child pornography files in his Limewire shared folder. Moreover, appellant knew exactly how his Limewire shared folder operated:

MJ: And were you aware that—say it's a hypothetical that you had gotten those images and videos from just one place, okay, we'll call it 'Place A,' and say that person had deleted those files from Place A, okay, would you still—would a person wanting to get those files still be able to get them?

Acc: Yes, they would, sir.

MJ: And would they be able to get them off of your compuer?

Acc: Yes, sir.

. . .

MJ: . . . And so when you put them in that shared file, did you know that those images and videos were able to be downloaded from your shared file?

Acc: Yes, sir.

MJ: And could you have taken them out of there?

> Acc: I could have taken them out of there and just placed them onto my personal—my own personal file, sir.
>
> . . .
>
> MJ: . . . Once you did that, would those files—and say you then deleted them from your shared file, would those files have been able to be downloaded from this new file you created that was in the shared file?
>
> Acc: No, sir.
>
> MJ: But you didn't do that, did you?
>
> Acc: No, sir.

Appellant later confirmed again a second time that he knowingly and intentionally left child pornography files in his Limewire shared folder:

> MJ: An act is done knowingly if done voluntarily and intentionally and not because of a mistake or accident or other innocent reasons. Do you believe that your putting—leaving those files in your shared file was done innocently or it was a mistake?
>
> Acc: No, it was neither, sir; it was intentionally put in there.

As set out in the majority opinion, appellant did not know if a third-party had actually downloaded child pornography files from his Limewire shared folder. But appellant did admit that it was possible for others to download the files from him. Further, appellant could not affirmatively claim that nobody had received a file from him in the past.

The military judge then completed the providence inquiry into Specification 3 of The Charge by reviewing the terminal elements of clause one and clause two, Article 134, UCMJ, in the context of distribution by making available:

> MJ: And do you believe that such conduct was prejudicial to good order and discipline?
>
> Acc: Yes, sir.
>
> MJ: Why?

Acc: Because, sir, it was, like I said, you know, in my previous statement, in regards to the—

MJ: This just isn't possession, this is distribution. This is somebody else can get them from you?

Acc: Roger, sir. What I was doing is I was inadvertently abetting other pedophiles in the world to, you know, satisfy their urges and their sexual desires.

MJ: Well, now you say 'inadvertently,' but you understand that this requires that you knew . . . that that was going on?

Acc: Roger, sir.

MJ: Did you know that was going on?

Acc: Yes, sir.

MJ: By 'inadvertently,' you might mean that you didn't spend a lot of time thinking about it; is that fair?

Acc: Yes, sir.

MJ: And you probably didn't want to think about it?

Acc: No, sir.

MJ: But generally when you say 'other pedophiles,' the people that want these kinds of images are people that have an interest sexually in children, correct?

Acc: Yes, sir.

MJ: And so by allowing them to be on this shared network and access via your computer, were you knowingly distributing those to other people?

Acc: Yes, sir.

MJ: And do you think if people out in the civilian community knew that a [s]oldier was doing this, that that would be service discrediting?

> Acc:  Yes, sir.

Finally, the providence inquiry into Specification 3 of The Charge culminated in the following exchange:

> MJ:  And . . . do you believe that [s]oldiers knowing that you made images available for download on your LimeWire account would tend to have less respect for you and be less likely to follow your orders?
>
> Acc:  Yes, sir.
>
> MJ:  And do you believe that's a direct impact on good order and discipline?
>
> Acc:  Yes, sir.

Article 79, UCMJ, defines a lesser-included offense as "an offense necessarily included in the offense charged. . . ."  UCMJ art. 79.  In turn, "[a]ny reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense."  UCMJ art. 59(b).  In my view, clause one and clause two offenses may be upheld here because they were necessarily included in the offense charged, as they were specifically contained within the specification.  *See United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (concluding that while clause one and clause two offenses are not necessarily lesser-included offenses of an offense alleged under clause three of Article 134, UCMJ, they could be "depending on the drafting of the specification.").

In this case, the record conspicuously reflects that appellant "clearly understood the nature of the prohibited conduct" as being criminal under clause one and clause two, Article 134, UCMJ, separate and apart from the underlying federal statute.  *Medina*, 66 M.J. at 28 (citation omitted).  To begin with, the government specifically included the clause one and clause two offenses, along with the theory of criminality, on the charge sheet.  The elements of the clause one and clause two offenses are textually contained within Specification 3 of The Charge.  As such, the military judge appropriately advised appellant of these elements and appellant supplied facts sufficient to knowingly and voluntarily admit guilt to them.  *See United States v. Ballan*, 71 M.J. 28, 35 (C.A.A.F. 2012) (observing that a military judge cannot accept a guilty plea unless an accused describes how the acts constitute the elements of the offenses to which he is pleading guilty) (citations omitted).

Moreover, the military judge even highlighted to appellant that a potential issue existed with respect to the definition of "distribution."  As noted by the

majority, the military judge informed appellant before arraignment and before appellant entered his pleas that *Christy*, *Kuemmerle*, and *Craig* may have altered the term "distribution" under the CPPA. Nonetheless, appellant chose to consciously admit guilt to the clause one and clause two offenses. At no point did appellant object to the existence of the clause one and clause two offenses. Appellant certainly could have pled guilty by exceptions had he felt that his conduct did not violate clauses one and two or because he simply did not want to admit his conduct violated clauses one and two. Instead, appellant chose to plead guilty to Specification 3 of The Charge as drafted in accordance with his offer to plead guilty.[1] Thus, the simple fact remains that appellant consciously chose to plead guilty to offenses alleged under clauses one and two of Article 134, UCMJ, despite the military judge's recognition of a potential problem with the term "distribution" in the context of the CPPA offense.[2]

Additionally, Specification 3 of The Charge, as drafted, provided appellant notice of alternate theories of criminal liability. *See Medina*, 66 M.J. at 26 (recognizing that the three clauses within Article 134, UCMJ, "do not create separate offenses[;] [i]nstead, they provide alternative ways of proving the criminal nature of the charged misconduct.") (quoting *United States v. Sapp*, 53 M.J. 90, 92 (C.A.A.F. 2000)). Since all three theories of liability were listed on the charge sheet, the military judge did not have to inform appellant during the guilty plea that clauses one and two were only applicable in the event that the clause three offense was set aside. Rather, the military judge was simply required to inform appellant of the elements of all three theories of liability and elicit facts sufficient to satisfy all three clauses, as any one theory on its own may suffice for criminal liability. *See Ballan*, 71 M.J. at 35 (finding that the military judge sufficiently described the clause one and clause two offenses during the plea colloquy to enable appellant to understand "what he was being charged with and why his conduct was prohibited."); *United States v. Rodriguez*, 66 M.J. 201, 204 (C.A.A.F. 2008) (recognizing the longstanding common law rule that when a guilty verdict is returned on an indictment charging several acts, the guilty finding attaches to each of the alternative theories charged); *Medina*, 66 M.J. at 26 (concluding that an accused

---

[1] I will not speculate as to whether appellant's offer to plead guilty would have been accepted had he excepted the terminal element language in a case where there was a potential legal issue with the clause three theory of liability.

[2] I do not see the need to except the words "distribute, by" from Specification 3 of The Charge. *See Mason*, 60 M.J. at 18–20 (declining to except out the term "child pornography" from the CPPA offense contained in the Specification of Charge III despite the military judge's use of the phrase "appear to be," which was "constitutionally overbroad"). In addition, "distribute" is specifically defined in Specification 3 of The Charge, which negates the necessity for excepting it out of the specification.

must "know under what clause he is pleading guilty" and that this can be accomplished "through advice by the military judge or through operation of the lesser included offense doctrine."); *O'Connor*, 58 M.J. at 452 (noting that conduct is punishable if it violates clause one, clause two, *or* clause three of Article 134, UCMJ) (emphasis added).

The presence of the clause one and clause two terminal elements within the specification, the conscious choice by appellant to pled guilty to the specification as drafted, the military judge's identification of the clause one and clause two terminal elements as elements of the specification necessary for a finding of guilt, and the factual link provided by appellant in the providence inquiry, and in the stipulation of fact, between the terminal elements and the conduct of distributing child pornography by making it available all establish that appellant knowingly, voluntarily, and intelligently admitted guilt to all three alternate theories of criminality.

In sum, the removal of the reference to 18 U.S.C. § 2252A from Specification 3 of The Charge does "not alter the essential nature of the offense." *Sapp*, 53 M.J. at 92. The violation of a federal statute is not required for appellant's conduct to be criminal under clauses one or two of Article 134, UCMJ. "[C]onduct which violates no specific statute may still be an offense . . . if it is found to be prejudicial to good order and discipline or if it is of a nature to bring discredit upon the armed forces." *Id*. at 92. (citations omitted). Here, the government placed appellant on notice that he was charged with violating clauses one and two of Article 134, UCMJ, within Specification 3 of The Charge. Appellant then provided admissions both in the stipulation of fact and during the providence inquiry to show that his conduct in making child pornography files available to others violated clauses one and two of Article 134, UCMJ. In fact, given the guilty plea to the specification as drafted, "[a]ppellant's admissions that his acts [violated clauses one and two of Article 134, UCMJ] were necessary in order for the military judge to accept [a]ppellant's guilty pleas." *Ballan*, 71 M.J. at 35 (citing *United States v. Care*, 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969)).

Thus, the charge sheet, the stipulation of fact, and the plea inquiry all objectively support the existence of a clause one and clause two offense under Article 134, UCMJ, and that appellant knowingly and voluntarily pled guilty to a clause one and clause two offense in this case. After reassessing the sentence on the basis of the error noted, and assuming without deciding[3] that the maximum punishment for Specification 3 of The Charge would change to four months confinement and forfeiture of two-thirds pay per month for four months, the entire

---

[3] Based on the facts of this case, I reserve for another day the issue of the maximum punishment for this offense. I note that the majority cites several offenses which could potentially provide the basis for a maximum punishment.

record, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors identified by Judge Baker in his concurring opinion in *Moffeit*, I would affirm the sentence as approved by the convening authority.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court